### Mumford vs. McKay.

Where A. and B. were *tenants in common* of certain lands, and carried on the farming business as *partners*, and A. sold and transferred his moiety of the lands, *it was held*, that by such transfer the partnership was dissolved, and that the grantee became a tenant in common with B. in the partnership property, taking the undivided share of his grantor, subject to all the rights of A., and to the account to be taken between the original partners.

And where, after such a transfer, B. took and sold a crop of wheat harvested upon the lands, *it was held*, that he was responsible to the grantee of A. in an action of *trover*, for the value of a moiety of the wheat; it not appearing that there were outstanding debts of the former partnership, which fact he was bound to shewn, if he claimed the right to retain, as the law would not presume its existence.

THIS was an action of trover, tried at the Monroe circuit, in the March, 1830, before the Hon. ADDISON GARDINER, one of the circuit judges.

The plaintiff claimed to recover the value of the moiety of 451 bushels of wheat reaped by the defendant in the harvest of 1825, on certain lots of land, a moiety of which where conveyed to the plaintiff in September, 1824, after the wheat was sown. The defendant and T. Mumford, the father of the plaintiff, previous to September, 1824, were *tenants in common* of certain lands in the county of Livingston, each owing one

half thereof, and a *partnership* existed between them in the cultivating and improving such lands, in the farming and milling business, and in the purchase and sale of grain and cattle. In the autumn of 1824, the defendant put in a crop of about 40 acres of wheat on two lots of land thus owned by him and T. Mumford, the sowing being completed by the middle of the month of September. On the 25th of September, 1824, T. Mumford, by deed, conveyed his moiety of the lands upon which the wheat was sowed to the plaintiff. In 1825, the defendant harvested the wheat which grew on the lands, which amounted to 451 bushels, and *sold* the same at $62\frac{1}{2}$ cents per bushel. The defendant moved for a nonsuit, insisting that he had a right to take the whole crop as partnership property, and was not responsible to the plaintiff until the partnership accounts between the defendant and T. Mumford were finally adjusted, which it was shewn were in litigation in the court of chancery, on a bill filed by T. Mumford against the defendant. A nonsuit was ordered, and a motion was now made to set it aside.

*J. A. Collier*, for the plaintiff.

*J. A. Spencer*, for defendant.

*By the Court*, SUTHERLAND, J. The plaintiff was improperly nonsuited. The evidence establishes, that Thomas Mumford and the defendant were not only tenants in common as to the farm, but were also *partners*, in carrying on the general business of farming. The testimony of Federal Blakesbee, a witness for the plaintiff, is clear and explicit upon this point. Being then tenants in common in the farm, each owning an undivided half, and partners in the crop, stock, and farming utensils, what was the effect of the conveyance from Thomas Mumford to his son, the present plaintiff, in September, 1824, of his undivided half of the farm, upon the rights of the parties in relation to the partnership property? It undoubtedly passed to the plaintiff all the interest of his father in the partnership property, and the partnership was thereby dissolved, and the plaintiff became a tenant in common with the

defendant in the partnership property. 6 Johns. R. 144. 14 id. 318. 17 id. 525. 1 East, 363. 7 Cowp. 448. 4 Burr. 2174. 5 Ves. 295. After the purchase, the plaintiff stood in the same relation to the defendant as the assignees of one bankrupt partner, under the ¦English bankrupt law, bear to the other partner. The interest of the assignees in such a case is the same as that which vests in a separate creditor of one partner, who purchases his interest in the partnership property under an execution against him for his individual debt. Mr. Gow, in his Treatise on Partnership, page 366, states the law correctly upon this subject. He says, the interest of the solvent partner is not affected by the sale in the one case, nor the bankruptcy and assignment in the other. The purchaser in the one case, and the assignee in the other, becomes, as to the interest of the indebted or insolvent partner, tenant in common with the solvent partner, taking only the *undivided* share of the debtor, subject to all the rights of the other partner, and to the account to be taken between them. The assignee, or the purchaser, has no right to change the possession, or make any specific division of the effects. He takes only such undivided share as the person whom he represents had, and in the same manner as he held it; and he is entitled only to the balance which is ascertained to be due to him after the partnership debts and the claims of the other partner are satisfied, and a division is made of the surplus. *Murray* v. *Murray*, 5 Johns. Ch. R. 60. 1 Salk. 392. 4 Ves. 496. 15 id. 559, note.

But the parties being tenants in common, a sale or destruction of the joint property by one, will subject him to an action of trover, by his co-tenant, unless he can shew that there were outstanding partnership debts. The burthen of shewing this ought to rest upon the party who undertakes to exercise an authority or dominion over the property, which is unjustifiable, unless such fact exists. The existence of such debt is not to be presumed.

It was conceded on the argument, that the sale by one tenant in common of the whole interest of his co-tenant amounted to a conversion for which trover would lie.

Nonsuit set aside, new trial granted, costs to abide the event.