# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JANUARY TERM, 1868.

| 34 | 365 |
|----|-----|
| 80 | 355 |
| 34 | 365 |
| 95 | 197 |
| 34 | 365 |
| 108 | 53 |
| 34 | 365 |
| 109 | 18 |
| 109 | 273 |
| 34 | 365 |
| 128 | 187 |
| 34 | 365 |
| 148 | 764 |

---

## WILLIAM ARRINGTON v. CHARLES LISCOM et al.

STATUTE OF LIMITATIONS—RIGHT OF REDEMPTION, WHEN BARRED.—The right of the mortgagee to maintain an action on the debt, and to enforce the lien of the mortgage given to secure it, and the right of the mortgagor to maintain an action for the redemption of the property from the lien of the mortgage, are reciprocal ; and when one is barred by the Statute of Limitations the other is also barred.

IDEM—TITLE UNDER.—An adverse possession of land for the period of time prescribed by the Statute of Limitations, not only bars the remedy, but practically extinguishes the right of the party having the true paper title, and vests a perfect title in the adverse holder.

STATUTE OF LIMITATIONS AS A SOURCE OF TITLE TO LANDS—A party who has been in the exclusive adverse possession of lands for a period of time which, under the Statute of Limitations, vests him with a title thereto, may maintain an action against a party claiming under a record title, to have said adverse claim determined and adjudged null and void as against him.

IDEM.—" Title to land is the means whereby the owner of lands has the just possession of his property." A party, under the Statute of Limitations, may acquire an absolute right of possession in lands as against all the world ; such a right as, when ousted, will restore him to and effectually protect him in his just possession thereof, even against one having the written title. An adverse possession, therefore, confers a substantial title, and it is such a title as entitles the holder to all the remedies to quiet his possession that are incident to possessions under written titles.

ACTION TO REMOVE CLOUD UPON TITLE.—An apparently good record title to land constitutes a cloud upon a title thereto which has been subsequently acquired by adverse possession under the Statute of Limitations, which the holder by adverse possession is entitled to have removed. This statute would have performed but half its mission as a statute of repose, if the party relying upon it, as to a party claiming under a written title, must wait till he is attacked before he can reduce the evidence of his title, which otherwise rests only in parol, to the form of a permanent record.

IDEM. — Arrington had been in the exclusive adverse possession of lands for twelve years, under a deed from one Harris, whole sole title was derived through a sale under a judgment foreclosing a mortgage executed by one Light. The title of Harris was defective, because one Liscom, a subsequent grantee of the mortgagor, Light, held the legal title at the time when said foreclosure suit was instituted, and not having been made a party to the action, his title was unaffected by the foreclosure and sale. After said twelve years adverse possession, Arrington brought an action against Liscom, alleging his title acquired under the proceedings of foreclosure and through his said adverse possession ; that Liscom claimed title adverse to him under his conveyance from Light ; that said title had ceased to have any validity as against said plaintiff, but being an apparently good title of record, it cast a cloud upon his title, which diminished the value of his estate ; and upon the case stated, asked that Liscom's adverse claim be determined, adjudged to be void, and that the said cloud be removed. Liscom, in his answer, admitted the facts alleged, but claimed title in himself, subject only to the mortgage, denying that it was a cloud on plaintiff's title, and as a ground for affirmative relief restated the facts, set up his record title, and asked to be allowed to redeem from the mortgage, and that Arrington be required to account for the rents and profits of the land. *Held,* first, that Liscom's right to redeem is barred by the Statute of Limitations ; second, that the action, upon the facts averred in the complaint, is not an action in substance or form for a strict foreclosure of the mortgage as against Liscom, and that there was no recognition by the plaintiff of a present subsisting mortgage, nor any waiver of the bar of the statute ; third, that Arrington had become vested with a perfect title to the land through his adverse possession during the period prescribed by the Statute of Limitations ; and fourth, that Liscom's title, as against Arrington, had become extinct, but being an apparent title from a common source, regular upon its face, it casts a cloud upon Arrington's title, and that Arrington is entitled to have the adverse claim of Liscom determined and adjudged invalid, and the cloud removed.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendants appealed.

The other facts are stated in the opinion of the Court.

*Nathaniel Bennett,* for Appellants.

The sole object of this suit seems to be to foreclose and cut off the rights of Liscom. It is, in fact, a reforeclosure of the mortgage; although the complaint charges that the claim of Liscom is a cloud upon the plaintiff's title. It is a cloud in the same way, and in no other, that the equity of redemption may be styled a cloud upon the rights of every mortgagee. The gist of the answer is, that Liscom still has a subsisting claim and title in the premises as the owner of the equity of redemption—that this equity of redemption has never been foreclosed—and that, as the plaintiff brings his action to foreclose such equity, Liscom, the owner of it, is entitled to come in and redeem with the same rights which the owner of any other equity of redemption possesses, and irrespective of the time which may have elapsed. The demurrer rests solely upon the ground of the Statute of Limitations; for, if there be no ground for the interposition of this statute, no question can arise upon the owner's setting up a good and sufficient defense.

The whole substance of the case, then, is that the mortgagee, or holder of the mortgage, brings a suit against the owner of the equity of redemption, to foreclose such equity, and the owner of the equity asks to redeem upon the same terms upon which holders of equities of redemption are always permitted and entitled to redeem. The plaintiff, Arrington, is the holder of the mortgage, and the defendant, Liscom, the holder of the equity of redemption. It would seem to be a plain proposition, that when the former institutes his foreclosure proceedings, the latter becomes, of course, entitled to the universal rights pertaining to the owner of an equity of redemption. The equity of redemption in favor of Liscom must subsist until it is foreclosed. Even though it should happen from lapse of time that Liscom himself could not institute proceedings to redeem, as plaintiff in an action, it by no means follows that he cannot insist on his right of redemption, when the machinery of the law is set in motion against him by the mortgagee. It may, perhaps, well be, that Liscom would have been remediless

in the premises if the adverse party had remained quiet—
if he had not treated the mortgage as still subsisting; and
yet, when he, by commencing suit, acts upon the hypothesis
of the mortgage still existing, the correlative rights of Lis-
com must also exist. The correct rule is laid down in
Angell on Limitations, Sec. 458. (See, also, 2 Hilliard on
Mort., p. 1, Sec. 2, p. 22, Secs. 40–42, p. 23, Secs. 48, 49;
*Calkins* v. *Calkins*, 3 Barb. S. C. R. 305, and cases there
cited; 20 N. Y. 147.)

*Quint & Hardy*, for Respondent.

[All the points and authorities contained in respondent's
brief are fully discussed in the opinions of the Court.—REP.]

By the Court, SAWYER, J.:

The plaintiff in his complaint substantially avers, that,
one Light, in 1849, being then the owner of the premises
described, conveyed them to one Harris, by deed absolute
in terms, but coupled with a defeasance and a covenant that
the same should be void on payment to said Harris of a cer-
tain sum of money according to conditions specified; that
on nonpayment of the money, in accordance with said terms,
said Harris, in a suit against said Light, in 1850, foreclosed
said mortgage, and in March, 1851, purchased in the prem-
ises under the judgment of foreclosure; that subsequently,
on the 9th of November, 1854, through sundry conveyances,
the plaintiff acquired the interest of said Harris in said
premises, and entered into possession, and made large and
valuable improvements thereon, and that ever since, down to
the present time, he has been in undisturbed and adverse
possession of the same; that subsequent to the execution of
said deed and defeasance, and before the commencement of
the said suit for foreclosure in 1850, said Light conveyed
his interest in said mortgaged premises, but in express terms
subject to said mortgage to defendant, Liscom; that said

deed to said Liscom is a cloud upon plaintiff's title; and said Liscom has no valid claim to said premises. He then asks that said Liscom be adjudged to quitclaim said premises to said plaintiff; that said cloud be removed and said deed declared null and void as against plaintiff's title thus acquired, and for such other relief as may be just and equitable.

The defendant, Liscom, answers, and, without denying any of the material allegations of fact in the complaint stated, sets them up affirmatively, and insists that inasmuch as he was not a party to the foreclosure suit, the mortgage was never foreclosed as to him; and that the legal title is in him by virtue of the said conveyance from Light, subject to said mortgage. As affirmative relief he seeks an account of the rents and profits, offering to pay any balance that may be found due, and asks for an affirmative judgment allowing him to redeem. The plaintiff demurs on the ground, among others, that the right to redeem is barred by the Statute of Limitations. The demurrer to the answer was sustained, and the defendant declining to amend, judgment was entered for plaintiff in pursuance of the prayer of the complaint. There can be no doubt that an action to redeem was long since barred. This point was determined in *Cunningham* v. *Hawkins*, 24 Cal. 409, 410, and *Grattan* v. *Wiggins*, 23 Cal. 35. As to the affirmative relief sought, the appellant is the actor, and he is as clearly affected by the bar as if he had brought an independent action to redeem. But he insists that the plaintiff's action is, upon the facts averred in the complaint, whatever he may choose to call it, a suit for a strict foreclosure, and as he has chosen to waive the statute and treat the mortgage as still subsisting, and the rights of the parties are mutual, the defendant is entitled to treat it as a live mortgage also, and the right to redeem is still a live equity. *Calkins* v. *Isbell*, 20 N. Y. 147, and *Calkins* v. *Calkins*, 3 Barb. 305, are relied on to sustain this view. In our judgment, however, upon the facts averred in the complaint, the action can in no sense be regarded as a proceeding

to foreclose the mortgage. The plaintiff never owned the mortgage, or the debt secured by it. He is simply a purchaser of the mortgaged premises from the purchaser under a judgment of foreclosure. The foreclosure, it may be conceded for the purposes of this case, was defective, because Liscom was not made a party and his title was not cut off. But the plaintiff was the purchaser of the land, not of the debt and mortgage. He simply got whatever title to the land passed by the Sheriff's sale, be it good or bad, much or little. He avers no assignment of the debt, or mortgage, or the judgment. The complaint sets out many matters unnecessary to be stated, but no objection was made in the Court below in any form to the mode of statement, or its sufficiency. The cause of action averred, when stripped of unnecessary matter, seems to us to be this: that the plaintiff in 1854 entered into possession of the premises in question, under a conveyance, and that he has ever since, for a period of some twelve years, been in the undisturbed adverse possession of the premises under said conveyance, thereby acquiring a good title under the Statute of Limitations; that the defendant, Liscom, holds a deed from the same source of title antedating his own, which might, at the time, have conveyed some interest to defendant, but which by the long adverse possession has ceased to have any vitality; that being of record, although no longer available to the defendant, it has become a cloud upon the title of plaintiff thus perfected as against the defendant by the Statute of Limitations. And the prayer is in accordance with this theory. The cause of action might have been averred in a better form, but this is the substance of it. And there is nothing in the answer to take the case out of the Statute of Limitations, or to avoid the title made under it, for adverse possession for the time specified in the statute in effect confers title. (*Grattan* v. *Wiggins*, 23 Cal. 36.) We know of no reason why a party who has been in adverse possession for a period of time, which, under the Statute of Limitations, vests him with a title against all the world, may not bring

his suit against a party claiming under a record title, to have the claim determined and adjudged null and void as against him. An apparently good record title would certainly be a cloud upon the title acquired by adverse possession under the Statute of Limitations. It is of record, and when produced makes out a *prima facie* case, which can only be defeated by evidence of adverse possession, which is not of record, unless established in a judicial proceeding, but rests in parol, and is liable to be lost and established with difficulty. Such an apparent record title could not fail to be a cloud that would greatly decrease the value of the title acquired by adverse possession. The Statute of Limitations, as against a party claiming under a written title, would have performed but half its mission, as a statute of repose, if the party relying upon it must wait till he is attacked before he can reduce the evidence of his title to the form of a permanent record. We think a party in possession whose right is perfected by an adverse possession during the period prescribed by the Statute of Limitations, as well as others, is entitled to bring his action, under section two hundred and fifty-four of the Practice Act, to determine an adverse claim or remove a cloud which would thenceforth diminish the value of his property. In this case the cause of action set up is an adverse possession of some twelve years under a conveyance which gives a title under the Statute of Limitations, and an outstanding conveyance from the same source of title, which, under the circumstances alleged, became a cloud, and which the plaintiff asks to have adjudged to be a cloud, and to have removed. The plaintiff in no part of his complaint recognizes directly or by implication the existence of any valid or subsisting mortgage. On the contrary, he denies that defendants have any valid claim or right, and insists that the conveyance from the original mortgagor is a cloud upon his own title. They even claim that the foreclosure is valid as against defendant, Liscom, and that he acquired a good title on grounds other than the Statute of Limitations. The action is in no sense

an action to foreclose the mortgage as against Liscom. We think the demurrer to the answer properly sustained.

Judgment affirmed.

[NOTE.—The foregoing opinion was delivered at the October Term, 1867. Subsequently, and before the delivery of the following opinion on petition for rehearing, Justices SPRAGUE and CROCKETT succeeded Chief Justice CURREY and Justice SHAFTER as members of the Court, and Justice SAWYER become Chief Justice.]

By the Court, SAWYER, C. J., on petition for rehearing:

After giving to the petition for rehearing, and to the original briefs in the case, the consideration which the views of counsel so eminent as appellant's deserve, and always receive from us, we are still satisfied that our former judgment is correct. The drift of the ingenious argument in the petition for rehearing, and in appellant's brief, is, to establish the proposition that the facts stated in the complaint show the object of the suit to be a foreclosure of a mortgage—that no other cause of action is shown. Unless this position can be successfully maintained, it is clear—and it seems to be so admitted—that the answer sets up no new matter calling for affirmative relief or constituting a defense. The decision in *Cunningham* v. *Hawkins*, 24 Cal. 408, and *Grattan* v. *Wiggins*, 23 Cal. 35, that the right of the mortgagee to foreclose, and of the mortgagor to redeem, are reciprocal, and that the right of action of both is barred at the same time, is not only admitted, but defendant · relies upon the principle. It is, also, admitted, that the right of foreclosure as against Liscom, and his right of redemption, were both, in fact, barred. But it is insisted, that both parties could waive the statute, and, if the plaintiff chose to treat the mortgage as still subsisting, and brought his action to foreclose, the defendant, Liscom, could accept the situation so assumed, and insist upon a redemption, upon the principles of the case of *Calkins* v. *Calkins*, 3 Barb. 305, and the same case under the name of *Culkins* v. *Isbell*, 20 N. Y. 147. The strain of the argument is to bring the case within

the principle of *Calkins* v. *Calkins*, by showing that plaintiff has brought an action of foreclosure, thereby admitting a subsisting mortgage, and placing defendant, Liscom, in the position to waive the Statute of Limitations, and avail himself of a right of redemption. The real and leading question, therefore, is, has the plaintiff treated the mortgage as still subsisting, and valid, and has he brought an action to foreclose within the rule declared in the case of *Calkins* v. *Isbell*, invoked by counsel. In our judgment he, clearly, has not. In determining this matter, we must be guided solely by the action of the plaintiff, for under the rule invoked, the right of the defendant, Liscom, to redeem, depends upon the action of the plaintiff in recognizing the existence of a still subsisting valid mortgage, and his entire action appears in the complaint. If the plaintiff has not made a case of foreclosure in his complaint—if, indeed, the term foreclosure, is strictly applicable under our system—the averments of the answer, which do not show some other act of recognition on the part of plaintiff, cannot aid in making one.

Now the facts stated in the complaint are, briefly and substantially, that on the 5th of December, 1849, one James Light, being then the owner and in possession of the premises in question, mortgaged them to one Harris, to secure a loan of money, by mortgage duly executed, acknowledged and recorded; that Light failed to pay, and said Harris, on the 11th of November, 1850, brought a suit against said Light to foreclose said mortgage, and in January, 1851, obtained a judgment for some six thousand five hundred dollars, foreclosing said mortgage and ordering a sale of said premises for the satisfaction and payment of said sum; that, under said judgment and order of sale, the Sheriff, on the 8th of March, 1851, sold said premises to said Harris, and executed a deed as required by law, which deed was duly acknowledged and recorded; that through sundry mesne conveyances from said Harris said plaintiff, on the 9th of November, 1854, acquired all the right, title and interest, which said Harris had acquired, under said mortgage and

proceedings thereunder; that he paid therefor the sum of eight thousand three hundred dollars; that upon his said purchase, said plaintiff entered into the possession of said premises, and erected improvements of the value of fifteen thousand dollars; that he has ever since been in the peaceable, quiet and undisturbed continuous adverse possession of said premises; that on the 26th of July, 1850, said Light sold and conveyed all his right, title and interest in said premises, subject to said mortgage, to defendant Liscom, by deed acknowledged and recorded on the 27th of July, 1850; that plaintiff had no knowledge of the existence of said deed to Liscom; that said deed from Light to Liscom is a cloud upon plaintiff's title, greatly depreciating the value of plaintiff's estate therein, and that said defendant, Liscom, has no real or valid claim or title to said premises. He then prays that defendant be required to quitclaim, and that the cloud now resting upon said plaintiff's title be forever removed and adjudged null and void, and for such other relief as may be just and equitable. The answer admits and restates the material facts, and draws different legal conclusions from them.

Upon the facts thus averred, the plaintiff claims that he is now vested with a valid title, unincumbered by any subsisting or valid lien, or mortgage of any kind, on two grounds. Firstly—The foreclosure proceedings having been had under the Civil Practice Act of 1850, which provides as follows (Section 309): "In proceedings to enforce a mortgage it shall not be necessary to make other incumbrancers parties, but the creditor may maintain his action against the mortgagor alone, alleging in his complaint the existence of the debt and of the mortgage, and praying a sale of the property mortgaged;" (Stat. 1850, p. 456,) it is claimed that under this provision it was not necessary to make Liscom, who was a subsequent grantee, a party, and that the judgment and sale is valid and effectual to pass the title, and that the vendee of the Sheriff acquired a perfect title without his being a party. Secondly—If wrong in this view, the plain-

tiff claims that he acquired a good and valid title under the
Statute of Limitations, through and by virtue of a twelve
years continuous adverse possession under his conveyance,
and that in either case the defendant, Liscom, has, in fact,
no present, existing or subsisting title or interest whatever,
and that his deed from the same source of title, although
apparently showing title upon the record, is but the repre-
sentation of a title that has become extinct; that it has
ceased to represent anything substantial, any reality, and
becomes a shadow only—a cloud which he is entitled to
have removed. These two aspects are fairly presented by
the facts alleged, and this is clearly the theory upon which
the complaint is framed and the action prosecuted. There
is not a line in the complaint, either in the allegations or
the prayer, that indicates a purpose to recognize any present
subsisting mortgage or title, equity of redemption, or other
interest, legal or equitable, now existing in the defendant,
Liscom. On the contrary, that idea is repudiated, and the
appropriate relief prayed on the theory of the case, as they
claim it to be. If the title of Liscom is extinguished, either
by the foreclosure already had, or by a twelve years adverse
possession, then his deed, representing an extinct title, gives
him no present subsisting right, either in law or equity, and
it can only be a shadow, casting its baleful influence upon
the title of plaintiff, diminishing the value of his estate, and
the plaintiff is entitled to have it removed. Conceding
plaintiff's legal propositions arising upon the facts averred
to be sound, the prayer for relief is appropriate to the case
alleged. And he has asked no relief inconsistent with this
theory of his case. While the prayer cannot aid in making
out a case otherwise defectively stated in the complaint, it
may well serve to show what kind of a case the plaintiff
supposes he has made, and the kind of relief to which he
conceives himself entitled. It may indicate the object which
the plaintiff seeks to accomplish.

For the purposes of this argument, we may safely accept
the definition of a foreclosure so confidently put forth as

HARVARD SCHOOL LIBRARY

conclusive of the whole question by appellant's counsel in his petition for a rehearing. " A foreclosure," says he, " in the original acceptation of the term, was nothing but a legal proceeding to extinguish the equity of redemption. It has no other or further object." And again : " What," he asks, " is a foreclosure of a mortgage ? Is it anything other than a proceeding in a Court of justice conducted according to legal forms, in and by which a mortgagee, or his assignee or successor, or any one who has, by operation of law, succeeded to the rights and liabilities of a mortgagee, undertakes to dispose of, or bar, or cut off the legal or equitable claims of lienholders, or of the mortgagor, or those who have succeeded to the rights and liabilities of the mortgagor ? If such be not in substance a foreclosure of a mortgage, things have, from time immemorial, been called in our law books by wrong names. And," counsel further asks, " wherein the facts averred in the complaint do not bring the proceeding precisely within the definition above given."

Notwithstanding the confidence with which the concluding interrogatory seems to be propounded, we will endeavor to make clear—what seems obvious enough to us—" wherein the facts averred in the complaint do not bring the proceeding precisely within the definition above given."

A suit to foreclose a mortgage necessarily pre-supposes a subsisting, living mortgage, with a correlative right of redemption, not already in any manner cut off, barred, or extinguished.

The plaintiff insists that the equity of redemption—the estate of the mortgagor, and of Liscom, who has succeeded to his rights—*has been disposed of, barred, cut off and extinguished already by a valid foreclosure, or, if not, then by a twelve years adverse possession, under a judicial sale, and thereunder purporting to convey the title.* He claims that Liscom's deed has ceased to represent anything substantial, and is a cloud on his title, and that Liscom has remaining no subsisting equity of redemption—no real or valid claim or title

to said premises. He insists that Liscom has no rights whatever, legal or equitable, to bar or cut off; that they have long since been barred, cut off and extinguished by lapse of time, and by judicial proceedings. He acknowledges no present existing right. He, therefore, does not ask that defendant's legal or equitable rights be barred, or cut off, but, on the contrary, as his rights have long since been in fact extinguished, he does pray, that the fact of their extinguishment and non-existence may be judicially declared; and since the substance has already been annihilated, that the shadow cast by the deed may be removed. It must be borne in mind, that we are not now discussing the question, whether the plaintiff's legal propositions upon the facts alleged, are sound, or not, but are only ascertaining the grounds of the action, as disclosed by the pleadings, for the purpose of determining whether the plaintiff's action is an action to foreclose a mortgage; whether he recognizes a subsisting mortgage and a correlative subsisting equity of redemption. For, unless this is the case, the defendant's right of redemption is confessedly gone. In the case of *Calkins* v. *Calkins* the recognition of the then present existence of a valid mortgage was necessarily involved in the very proceeding itself. The parties, after the bar of the statute had attached, were proceeding to foreclose by advertising, and selling under and by virtue of the terms of the mortgage itself, *as such*, in pursuance of the statute of New York, authorizing foreclosures in this mode. Such a proceeding *under* the mortgage, ostensibly to foreclose it, must necessarily be an acknowledgment of the existence of the debt, and of the mortgage *as a mortgage*. Suppose a sale had taken place, and a surplus had resulted, would it not have gone to the mortgagor? Suppose a complaint had been filed under the laws of New York asking a strict foreclosure, the judgment or decree would have given a day of payment, even under the old system, and, upon paying the amount due, the mortgage would have been discharged.

48

There would have been no occasion for a counterclaim for a judgment allowing a redemption. The judgment of foreclosure would have provided for it by giving a day of payment before the mortgagor should stand foreclosed. There never was any other practice when there was no sale ordered. Besides, under the former laws of New York, any acknowledgment, or recognition of the existence of a debt, within the time specified in the Statute of Limitations, took it out of the statute. The proceeding to foreclose the mortgage was a recognition of the existence of the debt and mortgage. In *Calkins* v. *Calkins* the Court say : " Tucker employed an attorney and commenced proceedings to foreclose the mortgage in question by advertisement under the statute. This, it seems to me, is a most clear and positive act of these parties, recognizing this as an open and subsisting mortgage, and must be regarded as an unqualified admission of the right of the complainant to redeem. * * * For it is a general principle, that no lapse of time will bar the right to redeem, so long as the mortgage has been treated, between the parties, as a subsisting mortgage and security only." (3 Barb. 308.) And, in the same case, on appeal, the Court say : " A notice under the statute, with whatever motive it may be given, is a distinct and emphatic admission, that the holder of the mortgage, if in possession of the land, claims that possession in the *character of mortgagee only.* The admission is addressed to the mortgagor, and to all concerned. The object may be to perfect a title, but the thing actually done is a very *direct invitation to the mortgagor to come forward and pay the debt, the amount of which must be set forth in the notice. The mortgagor may accept the invitation, and if he tenders the money the proceeding is at an end.*" (20 N. Y., 151, 152.) The difference between that case and the present is palpable. In the one case the parties professedly were proceeding to foreclose *by selling the land under the mortgage as such, to pay the debt, giving notice of the amount due, and necessarily, by the very character of the proceeding, acknowledging a present subsisting mortgage.* In the other, the plaintiff claims that the

mortgage *has already been foreclosed, and is absolutely extin-*
*guished in at least two modes, and denies that the successor of the*
*mortgagor has any present title, right or interest of any sort;* and
that the document under *which he claims an interest has become*
*a cloud, because his right is already extinguished, and on that very*
*ground asks that the fact that he has no title or interest be judi-*
*cially declared, and the cloud which overshadows a title now*
*claimed to be good and valid be removed.* He expressly claims
to be in possession as a purchaser of the legal title under a
judgment and sale, *as owner,* and *not as a mortgagee.* There is
no recognition of any existing right or interest of any sort in
defendant, Liscom, and no argument, however ingenious,
can make any such recognition, on the part of the plaintiff,
appear from anything contained in the pleadings, or make
the case at all similar to that of *Calkins* v. *Calkins.*

As the plaintiff does not recognize any equity of redemp-
tion, or other right of any sort, legal or equitable, in defend-
ant, Liscom, but denies any right, and does not seek to cut
off or bar any right whatever, the case is not within the
definition of appellant's counsel. It is, therefore, not an
action to foreclose a mortgage and cut off an equity of
redemption, but an action to remove a cloud from a title
claimed to be at present perfect, and there is no recognition
of a subsisting mortgage or right of redemption in the com-
plaint which can take the affirmative cause of action, set up
in Liscom's answer, out of the Statute of Limitations. Nor
is any act of recognition of a subsisting mortgage by the
plaintiff set up in the answer.

We hold that this is not an action to foreclose the mort-
gage; and assuming that the mortgage has never been
foreclosed as to defendant Liscom, that, upon the facts
appearing in the case, the right of foreclosure, and the cor-
relative right of redemption, are both barred by the Statute
of Limitations.

If there is any other aspect in which the answer presents
a good defense to the action, it is not apparent to us.

In our former opinion we did not think it necessary, under

the view we took, to determine the question whether the judgment and sale thereunder, in the foreclosure suit prosecuted to its conclusion under the Act of 1850, was effectual to cut off the interest of Liscom, the subsequent grantee, without making him a party to the action. We assumed, under the view we took—and we do not see how it could be otherwise understood—that it made no difference whether the title which he took by his conveyance, subject only to the mortgage lien, was cut off by the judgment and sale or not.

We find no reason now to change the grounds upon which the decision was before rested. We shall, therefore, for the purposes of the decision, again assume that the legal rights of the defendant, Liscom, were in nowise cut off by the proceedings in the foreclosure suit alone, and rest our decision upon the other aspect of title presented by the complaint. But, as we have done in respect to the point already discussed, we shall develop the grounds of the decision somewhat more fully than in our former opinion. The plaintiff, in this aspect of the case, alleges that he entered into possession in 1854, under a conveyance made in pursuance of a Sheriff's sale in a suit foreclosing a mortgage, and that he has ever since been in the peaceable, continuous adverse possession of the premises—that is to say, he entered under what purported to be a paper title, and he has been in the adverse possession under such title for a period of some twelve years. Did he acquire any positive affirmative rights under such a state of facts, or are they merely negative? Has he merely intrenched himself behind a wall which will serve as a bulwark of defense when attacked, or has he acquired an implement of offense, as well as of defense, when affirmative action is necessary to recover, or quiet a possession? In short, does adverse possession under our Statute of Limitations, during the time prescribed, invest a man with a substantial right, and give him, in fact, such an interest as entitles him to avail himself of all the remedies necessary to secure one in the lawful possession of the soil?

In *Grattan* v. *Wiggins*, 23 Cal. 36, the Court say, in refer-ence to that subject: " Lapse of time not only applies as a defense to an action, but it forms the basis of a new title acquired by prescription, which is founded upon the statute." Angell, in his work on Limitations of Actions, defines the word " limitation " as follows: " By the term ' limitation,' as here used, is meant the time which is prescribed by the authority of law (*ab auctoritate legis*) during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment, or the time at the end of which no action at law or equity can be maintained." (Angell on Limit., 1, Sec. 1.)

Some recent statutes provide in express terms that adverse possession for the time prescribed shall extinguish adverse titles and vest the possessor with the fee. (Act 3 and 4, Wm. IV; Angell on Limit., App. XIV, Sec. XXXIV, and Stat. Rhode Island, ib. App. LVII, Sec. 2.) Ours contains no such express provision, but is not that the effect of our statute, when properly construed? Angell says, in the language of Mr. Chancellor Harper, in *Drayton* v. *Marshall*, 1 Rice's Eq. 385: " The belief is, that no case can be put, in which a private individual knows that another person claims, and is in the actual enjoyment of land which belongs to him, and neglects to prosecute his rights at law, when there is nothing to pre-vent his doing so, that he will not be barred by the Statute of Limitations." (Angell on Limit., 397, Sec. 2.) And Angell further says: " It is also unquestionable that where the land has been held under a claim to the fee for the time prescribed by the statute, and an entry is made by the party who has the written title, such party may be dispossessed by an ejectment brought by him, who has so held and claimed." (Ib., 398, Sec. 2.) This was so held in *Jackson* v. *Oltz*, 8 Wend. 440. The lessors of the plaintiff had been in pos-session for the period prescribed by the Statute of Limita-tions, claiming title under a patent. Defendants afterwards entered, and held under a title which had been judicially determined to be valid. The action was brought by the

plaintiffs, relying upon the title acquired by adverse possession, against the defendants holding such paper title, and a recovery had. The Court say: "If the possession was adverse, and had been so for more than twenty years, as it had in this case, then that possession ripened into a title, and the plaintiff must recover against the defendant, though the paper title to the fifty acres is, in reality, not in him." (8 Wend. 442.) The same principle is recognized in *Jackson* v. *Dieffendorf*, 3 John. 269. And in *Jackson* v. *Rightmyer*, 16 John. 327, Mr. Chancellor Kent says, that showing a possession of thirty-eight years under a claim of right "was showing an absolute right of possession sufficient to toll an entry." Our Statute of Limitations relating to real estate is copied from the statute of New York, with but slight verbal changes; and we are not aware of any provision in the statutes of New York which would affect the construction on this point. In *Bradstreet* v. *Huntington*, Mr. Justice Johnson says: "That an adverse possession, where it actually exists, may be set up against any title whatsoever, either *to make out a title* under the Act of Limitations, or to show the nullity of a conveyance executed by one out of possession. On the first two of the propositions there can be no doubt, and none has been expressed." (5 Pet. 438.) And in *Drayton* v. *Marshall*, Mr. Chancellor Harper says: "The time, then, required to *mature a title* by the Statute of Limitations had run out more than five times before the filing of this bill." (1 Rice's Eq. 384.) And again: "But if by the statute defendants have acquired a title to the fee, they can, of course, have no right of redemption as against themselves. This must be merged or extinguished in the fee." (Ib. 386.) These remarks all go upon the idea that adverse possession for the time prescribed confers upon the possessor some interest, some positive right; that it affords him something more than a shield; in short, invests him with a title.

In *LeRoy* v. *Rogers*, 30 Cal. 234, we said: "Rogers' *title, thus acquired by adverse possession*—the claimants under the patent having a right of action and being under no disa-

bility—could not be impaired by an entry by those claiming under the patent, unless made in pursuance of a judgment to which Rogers was a party or privy."

So in *Taylor* v. *Horde*, 1 Burr. 119, Lord Mansfield said: " Twenty years adverse possession is a *positive title* to the defendant. It is not *a bar to the action or remedy only, but it takes away the right of possession.*" To the same effect are *Stokes* v. *Berry*, 2 Salk. 421, and *Pederick* v. *Searle*, 5 S. & R. 239. In *Leffingwell* v. *Warren*, 2 Black, 605, the Supreme Court of the U. S. say: " The lapse of time limited by such statutes *not only bars the remedy*, but it *extinguishes the right and vests a perfect title in the adverse holder.*" So in *School District Number Four in Winthrop* v. *Benson*, 31 Me. 384, the Court say: " A legal title is equally valid when once acquired, whether it be by disseizin, or by deed, it vests the fee simple, although the modes of proof, when adduced to establish it, may differ.   *   *   *   When the title is in controversy, it is to be shown by legal proof, and a continuous disseizin for twenty years is as effectual for that purpose as a deed duly executed. The title is created by the existence of the facts, and not by the exhibition of them in evidence. An open, notorious, exclusive and adverse possession for twenty years, would operate to convey a complete title to the plaintiffs, as much so as any written conveyance. And such title is not only an interest in the land, but it is one of the highest character, the absolute dominion over it, and the appropriate mode of conveying it is by deed." (See, also, *Barnish* v. *Thompson*, 7 Term R. 492 ; *Beckford* v. *Wade*, 17 Ves. Jr., 87 ; *Moore* v. *Luce*, 29 Pa. 260 ; *Thompson* v. *Green*, 4 O. St. 223 ; *Newcombe* v. *Leavitt*, 22 Ala. 631 ; *Thorn* v. *Lee*, 5 Geo. 217; *Chiles* v. *Jones*, 4 Dana, 483.)

True, at common law, after the right of possession was lost, the " mere right of property " remained, but " the estate of the owner is in such cases said to be totally divested and put to a right." (2 Bl. Com. 197.) The mere right of property remains, but " even this right of property will fail, or at least be without a remedy," unless pursued within

sixty years. (Ib. 199.) Can there be any doubt upon the principles stated in the authorities cited, that the right of property became at least practically extinguished by an adverse possession of sixty years? If an adverse possession of twenty years extinguished the right of possession of the true owner, and vested a right of possession—a title with reference to possessory actions—in the party holding adversely, why, upon the same principle, should not an adverse possession of sixty years, when the writ of right, which is based upon the mere right, is barred, be regarded as extinguishing the mere right of property in the owner and vesting it in the other party? Is not the principle the same in both cases? If not, why not? We are unable to distinguish them. If the right continues, why not the writ of right? Can there be said to be a right which is utterly incapable of being enforced—which is wholly without a remedy, either practical or theoretical? Can there be a right which is entirely unavailable for assault or defense, or for any purpose of enjoyment, which is utterly without the means or possibility of enforcement or enjoyment? Depriving one of the enjoyment of a legal or equitable right must, necessarily, constitute a legal or equitable wrong, and upon the fundamental principles of the common law there must be a remedy so long as there is a right remaining to protect, or a wrong to redress. (3 Bl. Com. 23.) A legal or equitable right necessarily implies a legal or equitable remedy—a remedy of some sort known to the law, practical or theoretical. But for this right, if it exists, there is neither.

Even in England the writ of right, and almost the entire catalogue of actions, real and mixed—some fifty or sixty in number—were abolished by the statutes 3 and 4 of William IV. The time of limitations for all real actions retained was reduced to twenty years, and by express provision enacted, that the right, or title of the party, who might have pursued his remedy, shall be extinguished by a twenty years adverse possession. (Angell on Limit., 356, Secs. 4, 5; Ib., App. VI, Secs. 2, 24, 34, 36; 3 Steph. Com. 491; 4 Kent

Com. 70, N. *g*.) This, in our judgment, was but enacting, in express terms, what was before the practical, if not the theoretical, result, at least after a sixty years adverse possession. Even before the Act of William IV, of the many actions brought within the preceding hundred years on the mere right, after the remedy in ejectment was barred, the Commissioners could not find that more than one or two had succeeded.

Under our Statute of Limitations a five years adverse possession covers all actions, and as effectually bars all rights of other claimants as a sixty years adverse possession under the common law.

Whatever may be true of personal contracts, it certainly cannot be said with reference to realty, in view of the authorities cited, that the statute only takes away the remedy, or that a right, a title, is not practically extinguished as to one party, and acquired by the other. The five years adverse possession, practically, at least, is conclusive evidence of title in the possessor, and if conclusive evidence of title in him, it must be as conclusive evidence of no title in the other. What is the legal definition of title to land ? A title is thus defined by Sir Edward Coke : " *Titulus est justa causa possidendi id quod nostrum est;* or it is the means whereby the owner of lands has the just possession of his property." (2 Bl. Com. 195.) If this definition presents the true idea of title, then, when a party's means of obtaining possession, or maintaining the possession when obtained, have been extinguished by an adverse possession, it would seem to follow that his title is effectually and substantially extinguished in fact, whatever his condition theoretically may be. And the party who has acquired an absolute right of possession, which will not only shield him in his possession against the attacks of all the world, but, when ousted, will restore him to, and protect him in, his just possession, even against the party having the written title, would seem to have a substantial title. We can see no reason why, for

49

all practical purposes, such a party's title should not be regarded both in law and equity, as good as though he, also, had a perfect written title. And we are dealing with practical, not merely theoretical, questions. If a party's right of possession has become absolute; has, by long adverse possession, ripened into what may as well, and as properly, for practical purposes, be called title, as anything else, so that he can maintain his possession, or recover it, when ousted, or maintain all actions for injuries to it against the party having the written title, in all respects in the same manner, and to the same extent, as against parties who never were other than entire strangers to the premises; if the party having the written title has lost, by the adverse possession, all means of recovering possession, or protecting a possession, when acquired without action, and all means of establishing or maintaining any right against the adverse possessor, we can perceive no good reason why such adverse possessor should be annoyed by pretended claims, or have the value of his possession diminished by an apparent title, which has lost its vitality.

We see no good reason why the party, whose adverse possession has practically ripened into a title, should not be entitled to all the remedies to quiet his possession, that are incident to possessions under written titles, which are, in law and equity, no more efficacious to protect the owners in the actual enjoyment of their possessions under them. Statutes of Limitations are said to be statutes of repose. If so, they should be so construed and administered with respect to cases falling within their purview, as to afford complete, not merely partial, repose.

We are not without authority bearing directly on the point. In the case of *Pendleton* v. *Alexander*, 8 Cranch, 462, a contest had been going on in respect to boundaries for many years. Pendleton and his grantors had been in the adverse possession from 1741 till the commencement of the action to quiet his possession in 1806. The action was by Pendleton, the party in adverse possession, against the other

claimants out of possession. The following statement by Mr. Chief Justice Marshall, shows the nature of the action, and circumstances under which it was commenced, etc.: " Nathan Pendleton being about to sell land in controversy, tendered to Charles Alexander a deed for quieting the title ; and, on his refusing to execute it, instituted a suit to compel him so to do. After the death of Charles Alexander, this suit was brought against defendants, his widow and children. In the Circuit Court a decree was rendered in favor of plaintiff, from which the defendants appealed." (3 Curtis, Dec. Sup. Ct. U. S. 224; 8 Cr. 466.) Mr. Chief Justice Marshall, in deciding the case, says : " By the laws which govern this case, a possession of thirty years, under some circumstances, and of fifty years under any, constitutes a title against all the world. The appellee, claiming under a possession perhaps from the year 1732, certainly from the year 1741, has a complete title, unless something can be alleged by the plaintiffs in error which shall deprive him of the advantages of that possession." (3 Curt. Dec. 224 ; 8 Cr. 569.) And, again : " The title of Pendleton, therefore, has from that act all the benefit which can be derived from a possession from the year 1741, when a possession ostensibly adversary by metes and bounds unquestionably commenced, to the institution of this suit in the year 1806. * * The appellee's *title, being secured by a possession of more than fifty years, is unquestionably good, and it is proper that the doubts which hang over it should be removed.* There is no error in the proceedings of the Circuit Court, and the decree is affirmed." (Ib. 226, *470.)

The action and the decree establishing a title and giving affirmative relief quieting it, rest *upon a title acquired by adverse possession.* The statute of Virginia, under which the title was acquired, did not in express terms provide that the title of the owner should be extinguished by the adverse possession, or that the possessor should be vested with a title. It merely purported, by the terms, to bar a remedy. After reciting and repealing a former Act, the statute pro-

vides : " Any person may hereafter maintain a writ of right upon the possession or seizin of his or her ancestor or predecessor within fifty years, or any other possessory action upon the possession or seizin of his or her ancestor or predecessor within forty years next before the .teste of the writ; but no person shall maintain a real action upon his own possession or seizin but within thirty years next before the teste of said writ, as in the said Act is already limited." It then provides that the process shall be the same and have the same effect as in England. (4 Henning's Statutes at Large of Virginia, from 1711 to 1736, p. 402, Sec. 9.)

We have examined the subsequent statutes of Virginia and find none affecting this question. The same provision was re-enacted in 1748, and the time in certain other actions relating to lands reduced to twenty years. (5 Ib. 415, Secs. 18–21.) This case appears to us to be in point.

So in England ; the plaintiff having " been in possession of a watercourse upwards of sixty years," brought his bill " for a perpetual injunction to quiet plaintiff's possession " against a defendant who " claimed the land' through which the watercourse run, by virtue of a forfeited mortgage for a hundred years, and which he had obtained a decree to foreclose." Plaintiff had a decree. (*Bush* v. *Western,* Finch's Precedents in Chancery, 530.)

The complaint presents a case of adverse possession ripened into a title of the kind considered in this opinion, with a paper title in defendant, Liscom, taking the most favorable view for him, which had ceased to have any vitality, and is incapable of affording the basis of .any right or claim, as against the plaintiff, recognized in law or equity, but which is nevertheless of record, while the evidence of plaintiff's title rests in part in parol ; and under it a claim of title is set up by defendant. It must, therefore, constitute a cloud upon the plaintiff's title, and tend to depreciate its value ; and the plaintiff is at all times liable to be called upon to litigate it. In our judgment the complaint presents a proper case for determining the adverse claim of defend-

ant, Liscom, and for removing the cloud. (*Head* v. *Fordyce*, 17 Cal. 151; *Curtis* v. *Sutter*, 15 Cal. 263; *Joyce* v. *McAvoy*, 31 Cal. 287; *Pixley* v. *Huggins*, 15 Cal. 129; *Hagar* v. *Shindler*, 29 Cal. 55.)

The complaint having presented a good cause of action, it must, of course, be met by an answer, either taking issue upon some of the material allegations or setting up other sufficient matter in avoidance. The answer does not take issue on any of the material allegations, and for the best of reasons, as counsel say, that they are true and cannot be rightfully denied. Besides, he relies upon the facts as constituting a part of his own case.

No issue being taken on the material allegations of the complaint, there, certainly, is no sufficient answer unless it sets up some new matter in avoidance. There are no material matters set up, other than a restatement of the facts contained in the complaint with different legal conclusions drawn from the facts. The title alleged in the complaint under consideration is a twelve years adverse possession under a Sheriff's deed. If there is any new matter averred, other than has been already stated, to prevent the operation of the statute, or take it out of the bar, appellants' counsel has not pointed it out, and we have not found it. It may be true, as counsel state, that had Liscom sued to recover possession of the land, and plaintiff set up his title under the Statute of Limitations in his answer, as he has set it up in his complaint, Liscom might have shown matter in avoidance, or facts taking the case out of the statute; as, that he claimed under a Mexican title, and that five years had not elapsed since the final confirmation. Concede it to be so for the purposes of this case. It is because the statute allows no replication, and the affirmative matter in the answer is deemed by the law to be controverted. But this is not his position. The plaintiff alleges as one of the grounds for his relief a twelve years adverse possession; and the adverse possession is admitted. The answer does not, by way of taking the case out of the statute, allege that defendant

derives title under the Mexican Government, and that five years have not elapsed since its final confirmation. He had an opportunity to allege it in his answer, if such be the fact. But it is not set up, and if the parties should go to trial upon the present pleadings, that matter could not be given in evidence under the issues. Nothing is said about it in the answer. It is not set up, and, so far as this particular matter is concerned, the defendant stands in precisely the same position as he would if the entire answer were stricken out. In that case there would be nothing to try. So now, as the answer does not touch the question on this point, there is no issue, and nothing to try. That it is matter of defense, and must be pleaded, when the right acquired by adverse possession under the statute is presented, as in this case, in the complaint, cannot, it seems to us, admit of a question. This principle is so settled in cases arising when replications were necessary. (*Richardson* v. *Williamson*, 24 Cal. 297, 298; *Vassault* v. *Scitz*, 31 Cal. 228.)

We do not know that Liscom does claim under a Mexican title, or that this matter of avoidance could be truthfully set up, and take it for granted it could not; but we are compelled to meet this view by the argument in the petition for rehearing, which insists that no good reason can be suggested why a claim under a Mexican title, confirmed within five years, could not be shown in the present case. It could not be shown, as we have stated, under the present pleadings.

The answer, in our opinion, presents no matter constituting a defense against the title derived under the Statute of Limitations, and the demurrer to it was properly sustained. and this is the only question presented for our consideration.

Rehearing denied.