MILO C. OSBORN, Appellant, *v.* HENRY B. SCHENCK et al.,
Respondents.

The fact of the possession and use by one of two tenants in common of personal property, of the property so held, even though it prevents the possession and use by the other, furnishes no ground to the latter for an action for conversion.

*It seems,* however, that if the possession develops into a destruction of the property, or of the interest of the co-tenant, or into such a hostile appropriation of it as excludes the possibility of beneficial enjoyment, or if it ends in a sale of the whole property, ignoring the rights of such co-tenant, then a conversion is established.

A purchaser, however, from the co-tenant who has assumed to sell the whole property is not made liable simply from his purchase and claim to be sole owner.

Plaintiff and P. owned a planing machine, which, with the building in which it stood, they leased for a term of years. P. being indebted to defendants gave them, as security, a chattel mortgage upon the whole machine; he informed them, however, at the time, that he owned only half, and plaintiff the other half. The payments stipulated in the mortgage were fixed so as to correspond, in amounts and dates, with the rents reserved in the lease which was looked to, to discharge the mortgage debt. In an action for conversion of plaintiff's interest, *held,* that the taking of the mortgage did not amount to a conversion by defendants, conceding that the giving of it was a conversion by P.; that the effect of the mortgage was simply to vest the interest of P., upon default, in defendants.

Defendant H. B. S., after default, removed the machine from the possession of the lessees, claiming a right so to do. It appeared that no demand was made upon him before suit brought, and until after that time he neither did nor said any thing in denial of plaintiff's right as co-tenant- *Held,* that the taking possession was simply the exercise of defendants' rights as co-tenants, and neither made the defendants jointly nor H. B. S. individually liable.

*Benedict* v. *Howard* (31 Barb. 569), *Van Doren* v. *Balty* (11 Hun, 239), distinguished.

(Argued December 3, 1880; decided December 14, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made May 6, 1879, reversing a judgment in favor of plaintiff, entered upon a verdict and granting a new trial. (Reported below, 18 Hun, 202.)

This action was brought to recover damages for the alleged conversion of a one-half interest in a planing machine.

The machine in question, in October, 1872, was owned by plaintiff and one Platt as tenants in common. On the fifteenth of that month they leased the building in which it was and the machinery therein for a term of five years. On or about that day Platt, being indebted to defendants, to secure such indebtedness, executed to them a chattel mortgage upon the whole of said machine; he, however, informed defendants that plaintiff owned one-half, and the payments secured, in amounts and dates, were made to correspond with the payments of rent reserved in the lease, from which source it was expected that the moneys to pay the mortgage debt would be obtained. Default having been made in the payment secured by the mortgage defendant Henry B. Schenck removed the planing machine from the premises so leased to a building owned by defendants, and upon being inquired of he said "they had a right to take it and did take it away."

Further facts appear in the opinion.

*Samuel Hand* for appellant. The tenant in common of chattels can maintain trover against his co-tenant, where such co-tenant has exercised exclusive dominion over the common property, claiming it as his own, or has lost, sold, or destroyed it. (*Wilson* v. *Reed*, 3 Johns. 178; *Hyde* v. *Stone*, 9 Cow. 232; *Mumford* v. *McKay*, 8 Wend. 444; *White* v. *Stone*, 21 id. 72; *Tyler* v. *Taylor*, 8 Barb. 585; *Benedict* v. *Howard*, 31 id. 569; *Van Doren* v. *Balty*, 11 Hun, 239; Freeman on Co-tenancy, §§ 307, 308, 317; *Delaney* v. *Root*, 99 Mass. 547; *Wheeler* v. *Wheeler*, 33 Me. 349; *Dyckman* v. *Valiente*, 42 N. Y. 549; *Strickland* v. *Parker*, 54 Me. 264.) Platt's sale to defendants consisted of the plaintiff's interest, for which trover lies against either of the wrong-doers. (*Van Doren* v. *Balty*, 11 Hun, 239, *supra;* *Waddel* v. *Cook*, 2 Hill, 47 and note *a;* *Dyckman* v. *Valiente*, 42 N. Y. 549, *supra;* Freeman on Co-tenancy, §§ 310, 311 and notes.) As affecting the plaintiff's interest in the planer, the sale by Platt to the de-

fendants was void, and the removal of the common property into a neighboring county by the defendants, accompanied with a claim of an exclusive right thereto and a refusal to account to the plaintiff for his interest therein, was a destruction of that interest. (*Benedict* v. *Howard*, 31 Barb. 569; Freeman on Co-tenancy, § 313; *Delaney* v. *Root*, 99 Mass. 547; *Dyckman* v. *Valiente*, 42 N. Y. 449; *Williams et al.* v. *Merle*, 11 Wend. 80.) An action for the conversion could be maintained by either the lessor or lessee, and it would be absurd to permit the defendants to set up their own wrong as a defense. (*Smith* v. *James*, 7 Cow. 328; *Austin* v. *Hudson R. R. Co.*, 25 N. Y. 334, 340, 341, etc.; 2 Greenl. on Ev. [13th ed.], § 616, and note; *Carter* v. *Burr*, 39 Barb. 59; *Christopher* v. *Austin*, 11 N. Y. 216.)

*J. A. Griswold* for respondents. There was not a conversion by defendants so as to enable the plaintiff to maintain this action. (*Fiero* v. *Betts*, 2 Barb. 633–635; *Gilbert* v. *Dickerson*, 7 Wend. 450; *Wilson* v. *Reid*, 3 Johns. 178; *St. John* v. *Standing*, 2 id. 468; *Fenning* v. *Lord Glenville*, 1 Taunt. 241; *Fobes* v. *Shattuck*, 22 Barb. 569.) Receiving the mortgage by defendants from Platt did not constitute a conversion by the mortgagees. (*The Matteawan Co.* v. *Bentley*, 13 Barb. 64; *St. John* v. *Standing*, 2 Johns. 467–469; *Gilbert* v. *Dickerson*, 7 Wend. 449; *Dyckman* v. *Valiente*, 42 N. Y. 501; Freeman on Co-tenancy, § 311.) To maintain an action for the conversion of property, the plaintiff must show that he either had the actual possession or was entitled to the immediate possession at the time of the alleged conversion. (3 Phillips on Ev. 220; *Whitcomb* v. *Hungerford*, 42 Barb. 177–185; 6 Bacon's Abr. title Trover, [C] 682.)

FINCH, J. When, and for what cause, one of two or more tenants in common of personal property may maintain trover against those retaining its possession is sufficiently clear on principle, but not always of easy application to confused and varying facts. The right of each to the use and possession of

the property is precisely the same, and neither can have or exercise a superior authority over the other. It follows necessarily that the mere fact of such possession and use by one, even though it prevents the use and possession of the other can furnish no ground of action, since it is rightful, and rests upon a lawful authority. But it also follows that if that possession develops into a destruction of the property or of the interest of the co-tenant, or into such a hostile appropriation of it as excludes the possibility of beneficial enjoyment by him, or ends in a sale of the whole property which ignores and denies any other right, then a conversion is established and trover may be maintained against the wrong-doer. The earlier cases on the subject hesitated to decide that a mere sale of the whole of the common property by one of the owners was sufficient proof of a conversion (*Wilson* v. *Reed*, 3 Johns. 176; *Hyde* v. *Stone*, 9 Cow. 230; *Mumford* v. *McKay*, 8 Wend. 444), and the loss or destruction of the property, so that it had passed out of the reach of the injured party, was to some extent coupled with the fact of a sale as furnishing the ground of an action. But in *White* v. *Osborn* (21 Wend. 75), the rule freed itself from any such incumbrance, and it was decided that the sale of the whole property which ignored and denied the right of the co-tenant, furnished sufficient proof of a conversion. That case has been steadily followed and the doctrine is now fully established. (*Tyler* v. *Taylor*, 8 Barb. 585; *Van Doren* v. *Balty*, 11 Hun, 239; *Delaney* v. *Root*, 99 Mass. 547; *Wheeler* v. *Wheeler*, 33 Me. 348; *Dyckman* v. *Valiente*, 42 N. Y. 560.) The application of that rule to the case before us makes it possible to say that the plaintiff could have maintained trover against Platt who was his co-tenant, although there were modifying circumstances which create a doubt. The two were owners in common of a planing machine which, with the building in which it stood and other appliances, they had leased to tenants for a term of years. Platt, being indebted to the defendants, gave them a chattel mortgage upon the whole machine as security for the debt. But when he did so he explained to them

that he was but the half-owner, and that the plaintiff owned the other half, and the payments reserved in the mortgage were shaped in amounts and date of maturity to correspond with the stipulated payments of rent which were looked to as the means of discharging the mortgage debt. The execution and delivery of this mortgage was a conditional sale of the property, which upon default ripened into an absolute title. It is claimed that this transaction constituted a conversion of the plaintiff's interest, for which trover would lie against either of the wrong-doers. That may be true as to Platt. The general language of his mortgage was presumptively evidence of a total sale (*White* v. *Osborn, supra*), but the notice given of part ownership in another, and the arrangement made for an application of the rents to the extinguishment of the mortgage debt, indicate a purpose, not to deny or ignore the right of the co-tenant, and so qualify the inference to be drawn from the broad language of the mortgage. · If, however, it be conceded that Platt was liable for a conversion because he mortgaged the whole property, it does not follow that the defendants were also wrong-doers, and equally liable. Assuredly their mere acceptance of the mortgage did not amount to a conversion. (*Matteawan Co.* v. *Bentley*, 13 Barb. 641.) The mortgage by itself in no manner interfered with plaintiff's interest. · It transferred no title to that interest. The cases which authorize an action for conversion expressly concede that only the interest of the vendor passes to the purchaser. Upon default title to the interest of the mortgagor became vested in the defendants. Nothing more than that could pass; nothing more did pass. If no other event had happened than the mere acceptance of this mortgage by Schenck, that fact alone would not have made him liable for a conversion. (*St. John* v. *Standring*, 2 Johns. 467 ; *Gilbert* v. *Dickerson*, 7 Wend. 449 ; *Dyckman* v. *Valiente, supra; Dain* v. *Cowing*, 22 Me. 347.) The case last cited states the rule plainly that the purchaser from a co-tenant who had assumed to sell the whole property was not liable without proof of a conversion other than that arising out of his becoming a purchaser and claiming to be sole owner.

Schenck, therefore, was not liable for a conversion when he accepted the mortgage. He acquired a lien by that instrument only upon the interest of Platt, and after default, becoming vested with that interest, was a tenant in common with plaintiff, and his further action must be tested, accordingly. The question now comes, whether that action made him liable in trover. The sole thing he did was to remove the machine from the possession of the lessees to his own. The only claim he made was that he took it and had a right to take it. There is no evidence that he used it. No demand was made of him before the action was brought. He neither did nor said any thing in denial of plaintiff's right as a co-tenant until after he was sued. He neither sold it nor destroyed it, nor so appropriated it as to bar any future enjoyment of it by plaintiff. In taking it he only exercised his admitted right as a co-tenant. He asserted no exclusive dominion over it. That assertion was not made until driven to an answer after action commenced for a conversion, and even then was not urged or intimated upon the trial. The defense was rested wholly and alone upon the right of the defendant as a co-tenant. To sustain his liability in this case we must practically abrogate the rule so long and thoroughly established, of the absolute equality of right of tenants in common, and hold that the mere taking possession of the common property by one, coupled with an assertion of his right to do so, is a wrong for which trover may be maintained. No case goes that length. In all there was some additional and decisive fact beyond the possession and claim of right to retain it. There was either a destruction of the property itself or of the power of beneficial enjoyment by the co-tenant. In *Benedict* v. *Howard* (31 Barb. 569), there was a practical destruction of the property as personal by changing it into real, and so barring the possibility of future use by the co-tenant. There was no such destruction of the property or the power of beneficial enjoyment in this case. In *Van Doren* v. *Balty* (11 Hun, 239), the mortgagee of half presumed to sell the whole at public auction, and the purchaser who was sued used and claimed it as his own, denying any other right and refus.

ing to deliver it on a demand.    No sale has been made by the mortgagees here ; there has been no demand and no refusal, and not even a claim of exclusive right.    These were the cases most relied upon to sustain the right of action, but do not just-tify the inference sought to be drawn from them.

The difficulty is intensified when we pass beyond Schenck, who took the machine, and consider the case as against the two other defendants.    There is a total absence of evidence as against them.    We may guess or believe that they are partners of Schenck, but the fact can scarcely be said to be proved.    If a wrong was done they neither joined in its commission, authorized the act, nor ratified it when done.    Their sole con-nection with the transaction is that the mortgage was made to " John B. Schenck's Sons," and they probably were mem-bers of that firm.

It is unnecessary to discuss other questions.    The views already expressed justify the reversal by the General Term. That order should be affirmed, and judgment absolute upon the stipulation be rendered in favor of the defendants.

All concur, except RAPALLO, J., absent.

Order affirmed and judgment accordingly.