CALKINS *v.* ISBELL *et al.*

Proceeding to foreclose a mortgage by advertisement is such an acknowledgment of the right of the mortgagor to redeem, as to repel the presumption otherwise arising from more than twenty years' possession by the mortgagee.

Calkins *v.* Isbell.

So *held,* where the mortgagee, who had granted the premises, instituted the proceeding at the request of his grantees, and with their knowledge and that of the mortgagor that the object was not to collect the mortgage but to perfect the title.

The mortgagor filing his bill to redeem, and showing after litigation with the grantees of the equity of redemption, that the mortgage had been satisfied by rents, a decree against them for costs held under the circumstances, a sound exercise of the court's discretion in that particular.

THIS was a suit in the late Court of Chancery. The original bill was filed in that court on the 20th of July, 1842, by the plaintiff against Mathew Calkins to compel him to cancel a mortgage, and to account for the rents and profits during the time he was in possession, and to stay proceedings on a foreclosure of the mortgage which he had commenced. The bill charges that the plaintiff, in January, 1817, executed a mortgage to Cleveland Holmes upon four acres of land in New Berlin, Chenango county, in lot No. 15, and also upon one equal undivided eighth part of two acres of land in the same lot, together with the three equal eighth parts of the saw mill standing on the same, and one equal undivided half of the carding-machine, buildings and utensils belonging to the same, to secure the payment of $696.12, all of which had been paid on the 30th of March, 1818, except $248.12: that no further payments had been made since, except by the use and rents of the premises received by the assignee of the mortgage while in possession: the last payment was due January 1, 1819: that on the 10th day of December, 1818, Holmes assigned the mortgage to John Thompson, and on the 1st of March, 1822, Thompson assigned it to Mathew Calkins: that Thompson took possession of the premises some time in 1820, and kept possession until he assigned the mortgage to Calkins, when he gave up possession to him: that Mathew Calkins or his grantees have continued in possession ever since: that at the time Thompson left and Calkins took possession, Mathew Calkins sold to Thompson machinery in the carding-warehouse building, worth $200, the half of which belonged to plaintiff, and should have been applied towards payment of the mortgage: that this machinery, together with the rents and profits received by Mathew Calkins,

fully paid and satisfied the mortgage, and that Mathew Calkins had commenced proceedings of foreclosure by advertisement under the statute. The bill prayed for an account: that the mortgage be canceled of record, and the plaintiff be put in possession of the premises; and for general relief.

The sum claimed to be due and unpaid upon the mortgage, at the date of the notice advertised, was $626.28. The assignment by Holmes to Thompson, recited that there was, at its date, unpaid on the mortgage the sum of $248.12; and that to Mathew Calkins stated the sum of $303.05 to be due at its date.

Mathew Calkins answered the original bill denying that the mortgage had been paid, and averring that the plaintiff had by an arrangement with Thompson surrendered the premises in payment of the amount due on the mortgage, and claimed to hold the premises and to foreclose the mortgage for the purpose of protecting the title only. That he had some years previous sold and conveyed by deed, the four acre lot to Charles Tucker, and the two acre lot, upon which the saw-mill stands, to James Isbell, and that the rents and profits had no more than paid the taxes and kept the premises in repair. A replication was put in to this answer, and proofs were taken. The cause was heard on pleadings and proofs before the Vice-Chancellor of the sixth circuit, and a decretal order made on the 15th of November, 1843, decreeing the title of the premises to be in the plaintiff: that the mortgage was an open subsisting mortgage, and the plaintiff had a right to come in and redeem; and a reference was ordered to take an account of the rents and profits. Mathew Calkins died on the 16th of May, 1844; and on the 10th of April, 1846, the plaintiff filed a bill of revivor and supplement, making James Isbell and others defendants, setting forth, among other things, the substance of the original bill and supplemental matter, and praying, among other things, the possession of the premises claimed by Isbell, together with a prayer for general relief.

Isbell answered the supplemental bill, claiming the title and fee simple of the premises, and that he had been in possession of two acres and a saw-mill under his two deeds from Philo

and J. W. Chapman, since October 11, 1841. He denied that he knew anything about the mortgage, or anything about its foreclosure, except by hearsay. The evidence, however, was held by the court here to prove that he was aware of and interested himself in the proceedings for foreclosure during their progress, on the 27th of October, 1841. The cause was heard on the pleadings and proofs on the supplemental bill before a Justice of the Supreme Court of the sixth district, and on the 20th March, 1848, a decretal order was made, referring the cause and directing the referee to take and state an account between the parties. The referee took such account and made his report, to which the plaintiff excepted, and the court at special term modified the report. The defendant appealed from the order modifying the report, and the order was affirmed at general term. By this order nothing was found due upon the mortgage. A decree was made at special term in December, 1852, that the plaintiff was entitled to the possession of the mortgaged premises, and decreeing costs against Isbell and Tucker, two of the defendants. Exceptions were filed and an appeal taken. The decree was affirmed at general term in the sixth district, and the defendant, Isbell, appealed to this court.

*B. F. Rexford,* for the appellant.

*John K. Porter,* for the respondent.

COMSTOCK, J. I see no reason to doubt that the plaintiff's suit to recover the possession of the premises in question, and incidentally to have the mortgage thereon declared satisfied, would be barred by the lapse of time, but for the proceeding instituted to foreclose that mortgage. It seems that in 1820 the mortgagor abandoned the possession to Thompson, who had then become the assignee of the mortgage; and this was done under an agreement that the land was to be taken in satisfaction of the debt. This was a parol arrangement, and clearly was not a release of the equity of the redemption or conveyance of the title to the holder of the mortgage. But the pos-

session taken under those circumstances was adverse to the mortgagor's right, and in twenty years would ripen into a bar to any action, whether at law or in equity, instituted for the assertion of that right. This suit was commenced after twenty years had elapsed, the possession taken as before mentioned having been continued without interruption during all that period.

Thompson in 1822 assigned the mortgage to the defendant Mathew Calkins, and the latter afterwards sold and conveyed the premises in two different parcels, one to the defendant Tucker and the other to one Chapman under whom the appellant Isbell claims title. Mathew Calkins, it seems, never assigned the mortgage, and not long before this suit was commenced he began a foreclosure upon it by advertisement under the statute. The proof shows quite clearly that this was done, not for the purpose of collecting the money alleged to be unpaid on the mortgage, but in order to perfect a title which would be more satisfactory to the grantees Tucker and Isbell. The evidence also leaves no reasonable doubt that the mortgagor understood such to be the motive of Mathew Calkins in commencing the foreclosure; and I am satisfied, moreover, that the proceeding was instituted with the concurrence and at the request of both Tucker and Isbell. It is, therefore, to be deemed their act, as well as that of Calkins, for all the purposes of the present case.

Under the circumstances stated, I have hesitated somewhat upon the question whether the right of the mortgagor to reclaim the possession of his land was revived by the attempt to foreclose the mortgage upon it; but, on the whole, I am convinced that such is the effect to be given to that proceeding. If a bill of strict foreclosure had been filed, even with the avowed object of perfecting the title, no one would entertain the slightest doubt on the subject. The very decree to be pronounced in such a case would give the mortgagor a certain time to come in and satisfy the incumbrance, to the end that the premises might be restored to him. A notice under the statute, with whatever motive it may be given, is a very distinct and emphatic admission that the holder of the mortgage,

if in possession of the land, claims that possession in the charac-
ter of mortgagee only. This admission is addressed to the
mortgagor, and to all other parties concerned. The object may
be to perfect a title, but the thing actually done is a very direct
invitation to the mortgagor to come forward and pay the debt,
the amount of which must be set forth in the notice. The
mortgagor may accept the invitation, and if he tenders the
money the proceeding is at an end. If the tender does not,
*per se*, discharge the mortgage, it is, nevertheless, a good founda-
tion for a bill to enjoin the sale. But suppose the mortgagor
does nothing, and a sale is had under the power pursuant to
the notice, resulting in a surplus over and above the amount
claimed to be due; it cannot be doubted that the mortgagor, or
his representative, is entitled to that surplus. Yet this can be
true only on the ground that all the interest which the mortga-
gee has in the premises is satisfied and extinguished when the
debt is paid. In short, a proceeding to foreclose, with whatever
motive instituted, seems to be entirely inconsistent with any
pretension on the part of the mortgagee that his possession has
ripened into a title. I am, therefore, of opinion that the plain-
tiff is not barred by any statute or rule of limitation.

On the argument, it was claimed, in behalf of Isbell the
appellant, that the judgment below is erroneous in respect to
costs. So far as costs accrued after the filing of the bill of sup-
plement and revivor, by which the defendants Isbell and Tucker
were made parties, they were directed to pay them. On exam-
ining the reasons assigned for this part of the decree, I am not
prepared to say that the direction was rot in accordance with
the justice of the case. The plaintiff succeeded, not only upon
the controverted question of his right to recover the premises,
but it was also adjudged, after a severe and protracted litiga-
tion, that nothing was due upon the mortgage. He, therefore,
according to the decision, was wholly right, and the defendants
were wholly in the wrong. A number of cases have been cited
to show that in general, on a bill to redeem, the mortgagor must
pay costs; but the rule scarcely applies to a controversy having
such features and results as the present. That rule was, more-

over, one of discretion, and not of law. This bill and supplemental bill were filed in Chancery before the Code, and by statute (2 *R. S.*, 613, §§ 1, 2) it is declared that costs in Chancery, except in certain cases which do not include this litigation, shall be paid by such party as the court shall direct. If we have power to consider the question, which I very much doubt, I think we ought not to review the discretion which has been exercised.

It seems that, on the 20th of March, 1848, a decretal order was made in the suit, declaratory of the plaintiff's right to redeem the mortgage and to recover the premises, and directing a reference to take and state an account of rents and profits. The referee, after a protracted and expensive examination, made his report in October, 1849, finding due from the plaintiff, on the mortgage in question, the sum of $775.84. Exceptions were taken to the report by the plaintiff, and on a further hearing of the cause upon the report and questions reserved, at a special term of the Supreme Court, certain exceptions were allowed, and it was determined that the mortgage was fully paid. A final decree or judgment was pronounced accordingly, which, on appeal, was affirmed at a general term. It has been argued here that the report and conclusion of the referee could not be reviewed at the special term, nor otherwise than on a direct appeal therefrom to the general term. If this were so, I think it would afford no ground for interfering with the judgment. The whole case was considered at the general term, and the decision there made, which is now under review in this court, cannot be erroneous on the mere ground that the exceptions to the referee's report had been previously passed upon at the special term, although without authority. But I am of opinion that the report of the referee and the exceptions thereto were properly before the special term for consideration at the final hearing of the cause. The suit was in Chancery, and, before a final decree could be made, an account of rents and profits was necessary. To take this account, a reference was ordered by an interlocutory decision entered before the Code of Procedure, or the act supplementary thereto "to facilitate the deter-

mination of·existing suits," were passed. (*Laws of* 1848, *chs.* 379, 380.) The reference thus directed was in all respects the ordinary one in a court of equity, except in the substitution of a referee in place of a master, whose office had been abolished by the new Constitution of 1846. This substitution was provided for in the judiciary act of 1847. (*Laws of* 1847, *p.* 344, § 77.) On references of this nature, the practice in Chancery was, as every lawyer knows, to except to the report upon matters of law or fact. The master then certified the evidence before him to the court, and the court overruled or allowed the exceptions, as it thought proper, and made a final decision in the case. Such was the practice pursued in the present case, and it was strictly correct. The supplementary act before mentioned did not, upon any reasonable construction of its terms, apply to pending suits in equity where a reference had been already ordered. (*Ch.* 2, §§ 3, 4, 5.)

It is said, however, that the report and conclusions of the referee were correct, and that the court of original jurisdiction erred in the changes and modifications which were made therein in pronouncing the final decree. This subject is involved in an immense mass of evidence, and a discussion of it in this place would of necessity be quite extended. I shall, therefore, content myself with observing, that upon such examination as I have been able to give to the matter, I see no ground for overruling the conclusions at which the court arrived.

We think the judgment of the court below must be affirmed.

ALLEN J., delivered an opinion to the same effect upon the question of law, and supporting the judgment below upon the facts by an extended examination of the evidence; GROVER, J., dissented.

Judgment affirmed.