## DENNIS V. TOMLINSON.

1. MORTGAGEES: *Mortgagee of land may buy from purchaser at execution sale.*

   A mortgagee of land may purchase it from one who buys it at an execution sale, where the circumstances show that he was a *bona fide* purchaser and took no unconscientious advantage.

2. EXECUTION SALE: *Right of redemption.*

   The Code of Civil Practice (sec. 890) provided that from and after its passage all proceedings pursuant to its provisions, should be valid, but that it should not take effect for all purposes until the first day of January, 1869, and should not render invalid any proceeding before that date. *Held:* That where land was sold under execution on the second day of November, 1868, and was conveyed by the Sheriff immediately after its sale, it was not subject to redemption under the provisions of the Code.

3. SAME: *Advertisement of.*

   Section 57, chapter 68, of Gould's Digest, which required execution sales of real estate to be advertised by at least three notices put up in the most public places in each township of the county where the land was situated, or by advertisement in some newspaper printed in such county, was so far repealed by the act of July 14, 1868, which required the sale to be advertised in a newspaper designated by the Governor, as the official newspaper of the county in which the sale was to be made, that a sale made in November, 1868, and advertised in the official newspaper, was valid, although the paper was printed outside of the county.

APPEAL from *Lincoln* Circuit Court in Chancery.
JOHN A. WILLIAMS, Judge.

*D. H. Rousseau* and *J. M. Cunningham* for appellants.

1. John W. Simpson went into possession of the premises under an agreement with Henry T., by which Henry T. granted him the lands, in consideration of which John W. released the mortgage debt of $1507.88, paid other debts, and agreed to maintain and provide for Henry T. during his life. This, if only a parol agreement, is one the law will enforce. *Brown Stat. Frauds, 463; 3 Sandf. Chy., 279; 4 N. Y., 403; 4*

Dennis v. Tomlinson.

*Wisc., 343; 2 Stock., 362; 36 N. Y., 327; 35 id., 658; 20 Ind., 223; 62 Mo., 112; Read Stat. Frauds, 595.*

Further, the case is not only taken out of the operation of the statute of frauds, by proof of the payment of the consideration, and full performance of all the service agreed to be done; but evidence of the admissions of Henry T. Simpson, clearly show that he had delivered up the possession under the contract, which, of itself, takes the case out of the statute. *Keats v. Rector, 1 Ark., 391; Morrison v. Peay, 21 Ark., 110; Blakeny v. Ferguson, 8 Ark., 272; Cain v. Leslie, 15 Ark., 315; Kellums v. Richardson, 21 Ark., 139; Pindall v. Trevor, 30 Ark., 249; Pledger v. Garrison, 42 Ark., 246.*

2. The issue of execution, sale and Sheriff's deed to Hutchinson were in strict compliance with Gould's Digest, chapter 68, then in force, and these proceedings were not invalidated by the Code, but expressly excepted by its provisions. *Code, sec. 692; Acts July, 1868, last ses.; Acts 1869, p. 162.*

3. There is no reason why John W. Simpson could not purchase from Hutchinson; he stood in no trust or fiduciary relation to Henry T. The presumption is his holding and possession was rightful, and in the absence of evidence to the contrary, that he was holding that part not included in the mortgage, as the tenant of Henry T. *Mansf. Dig. ,sec. 4169; Sedg. & W. Tr. of Title to Land, 729; 16 Johns., 293; 8 Jones (N. C.), 430; 11 Wend., 616; 8 Cow., 13; 10 B. & Cr., 721.*

As mortgagee, he could buy in an encumbrance, the equity of redemption, or an outstanding title. *8 Hare., 216; Sedg. & W. Trial of Land Titles, 343; 62 N. Y., 406.*

And as tenant he could set up the title against his landlord. *Wood Lim., 557; 6 Wend., 666; 17 Ark., 546; 12 Wend., 309; 4 Johns., 682.*

Dennis v. Tomlinson.

*Harrison & Harrison* for appellees.

1. It is evident that John W. was in possession either as agent or tenant of Henry T., and in neither case could he acquire an adverse title by the conveyance from Hutchinson. *30 Ark., 44; 7 B. Mon., 305; 7 Dana, 388; 4 Cow., 717; 9 Paige, 649; 20 Ark., 381; 1 Story Eq. Jur., sec. 323.*

2. Hutchinson's deed was a nullity. The execution sale was after the adoption of the Code allowing judgment debtors twelve months to redeem. *Mansf. Dig., sec. 3067.*

The deed was premature and void. *31 Ark., 443; Freeman Void Jud. Sales, sec. 43; Freeman Ex., sec. 316; 2 Jones Mort., sec. 1586; 14 Wisc., 450; 17 id., 255; 23 Ill., 524; 15 Wisc., 571; 16 id., 28; 21 Cal., 233.*

4. The sale by the Sheriff was not made according to law; the advertisement was in a paper not published in the county.

*M. A. Austin* for appellees.

1. Contends that John W. held as an agent or tenant, and in a fiduciary capacity, and as such could acquire no interest or title adverse to Henry T. *Ad. Eq., pp. 50, 60; 1 Story Eq., secs. 316, 465; 2 id., sec. 1211; Pom. Eq. Jur., vol. 2, sec. 1077; 9 Paige Chy., 237; id., 649; 8 Barb. (U. S.), 136; 4 How. (U. S.), 503; Pom. Eq., secs. 956, 955, 958-9, 1044, 1075, 1077, 1078, 1088; 3 Keys, 296; 20 Ark., 381; 41 id., 264; 23 id., 622; 3 Price, 83; 66 Barb., 222.*

While ordinarily a mortgagee may buy in the equity of redemption under execution or otherwise, yet the courts look upon such transactions with jealousy, and whenever any fiduciary relation appears they always hold the mortgagee a trustee. *12 How., 66; 1 Jones Mort. Real Est., secs. 709 to 713; 7 Fed. Rep., 689; 46 Am. Dec., 171; 2 Johns. Chy., 252; 5 id.,*

*388; 3 Ves., 740; 96 U. S., 332; 16 id., 188; 62 N. Y., 416; 12 How., 139; 2 Wh. & Fed. L. C. (4th Am. ed.), pp. 1983–1995; Pom. Eq. Jur., sec. 951.*

BATTLE, J.   Plaintiffs allege, in their complaint, that Henry T. Simpson departed this life on or about the 9th of September, 1869, intestate, seized in fee simple of the west half and the southeast fractional quarter of section eleven (11) in township seven (7) south, and in range six (6) west, and then in the county of Arkansas, but now in the county of Lincoln, and leaving his brother, John W. Simpson; Mary Tomlinson, the child of his sister, Alcinda Bronson; Fannie Brewster and Florence May Harding, children of his sister, Fannie Brewster; Reuben T. Dye, John B. Dye, Fannie Dye and Richard H. Smith, children of his sister, Annie Smith; Martha F. Scott, Elizabeth J. Wyatt and Cherry C. Parker, children of his sister, Jane Parker; and Mary J. Boles, Allie E. Burke, Adela F. Johnson, Cherry W. Parker, John M. Parker and George Parker, children of his sister, Cordelia Parker, his heirs at law; and that the plaintiffs and defendants in this action are the only heirs now surviving.

That soon after the death of Henry T. Simpson, John W. Simpson took possession of the personal property of the deceased and converted it to his own use, and entered into possession of the lands and received the rents and profits thereof and continued in such possession and receipt until his death, and that his heirs from and at all times since his death have continued in such possession and receipt, and that neither he nor they have ever accounted to or with plaintiffs or either of them, or any of the other heirs of Henry T. Simpson, in respect to or of and concerning such rents and profits.

That John W. Simpson died in the year 1876, intestate, leaving his daughter, Elizabeth Dennis, one of the defendants

herein, and his sons, J. B. Lockhart Simpson and Thompson Simpson, his heirs at law him surviving.

That J. B. Lockhart Simpson departed this life in the year 1878, intestate, leaving Lydia Simpson, his widow, one of the defendants in this action, and his sister, Elizabeth Dennis, and his brother, Thompson Simpson, his heirs at law.

That Thompson Simpson died in 1882, intestate, leaving Neppie Simpson, his widow, one of the defendants herein, and his daughters, Mary Simpson and Zoe Simpson, two of the defendants herein, his heirs at law.

That on the 1st day of August, 1866, Henry T. Simpson, in his lifetime, mortgaged the west half of section eleven to John W. Simpson, to secure the payment of a certain writing obligatory on that day executed by him to John W. Simpson, for the sum of $1507.88, payable on the second day of August, 1866, and bearing 10 per centum per annum interest from maturity until paid; and that the deed of mortgage was acknowledged on the 3d day of June, 1867, and on the 27th of the same month was filed for record and recorded in the recorder's office of Arkansas county.

That this writing obligatory was paid in the lifetime of Henry T. Simpson; and that, if anything remained unpaid, it was paid by and out of the rents and profits received by John W. Simpson, in his lifetime.

And plaintiffs asked, in their complaint, that an account of the rents and profits so received be taken; and that, if it shall appear that any part of the writing obligatory secured by the mortgage remained unpaid at the time of the death of Henry T. Simpson, so much of the rents and profits received be appropriated to the payment thereof; and that the afore-described lands be divided between plaintiffs and defendants according to their several and respective interests, and for other relief.

The court appointed a guardian *ad litem* for the minor de-

Dennis v. Tomlinson.

fendants, Mary and Zoe Simpson, who accepted the appointment, and filed answers for each of them, denying all allegations in the complaint prejudicial to their interests.

The defendants, Timothy S. Dennis, Elizabeth Dennis, Lydia F. Simpson and Neppie Simpson, severally and separately, answered the complaint, admitting that Henry T. Simpson owned the lands in controversy at the time of the execution of the mortgage and writing obligatory, and alleged that Henry T. Simpson being indebted to John W. Simpson in the full amount of the principal and interest of the writing obligatory mentioned in the complaint, in consideration of the agreement of John W. Simpson to release him from all obligations to pay it and to maintain and support him for and during the remainder of his natural life, agreed to and did sell, surrender and deliver to John W. Simpson the lands in controversy; and that, thereupon, John W. Simpson released him from all obligations to pay the writing obligatory, and, in the lifetime of Henry T. Simpson, took possession of the lands, and from thenceforth he and his heirs have held exclusive, open, notorious and adverse possession thereof, and maintained and supported him, Henry T. Simpson, at his own cost and charge, thenceforth and until his death.

That Robert Hutchinson, as surviving partner of the firm of Yell & Hutchinson, on the 20th of May, 1867, in the Arkansas Circuit Court, recovered a judgment against Henry T. Simpson, for the sum of $134, debt, and $52,93, damages, and $21.05, costs; that afterwards, on the 29th of September, 1868, Hutchinson caused an execution to be issued on said judgment; that the Sheriff, to whom it was directed, levied it on the lands in controversy, and sold them under the execution, on the 2d day of November, 1868, to Hutchinson, he being the highest bidder therefor; and that, on the 24th of May, 1869, the Sheriff conveyed the land to Hutchinson, in the manner prescribed by law; and that, on the 24th of July,

1869, Hutchinson, for and in consideration of the sum of $350 paid by John W. Simpson, conveyed the lands to him, John W. Simpson; and that thereafter John W. Simpson, and since his death his heirs, held possession of the lands, adverse to all the world, under the conveyance made by Hutchinson, and paid all the taxes assessed against the same.

That since the death of John W. Simpson, his heirs have divided these lands between themselves, and by their several deeds have conveyed their respective interests in each parcel to the heir to whom the same was set apart in the division; and that each one of the heirs, believing that he, or she, had a good and valid title, has made valuable improvements on the lands so set apart to him or her.

That plaintiffs' right of action did not accrue within three years, nor within seven years, next before the commencement of this action.

And they insisted and asked, that, in the event it should be adjudged that the plaintiffs were entitled to a partition of the lands, the mortgage executed by Henry T. Simpson should be first satisfied, and that the amount paid Hutchinson by John W. Simpson, and the amount paid in payment of taxes, and the value of the improvements made by them, should be declared a lien on the lands by the court and that such lien be foreclosed according to law.

Plaintiffs replied to the answer of defendants, denying that the Sheriff levied on, sold or conveyed, or that Hutchinson sold or conveyed to John W. Simpson, the whole of the lands in controversy, but say that the Sheriff conveyed so much of the lands as he sold, immediately after the sale; and deny all the other allegations in defendant's answers.

The court below decreed that plaintiffs were entitled to redeem the lands by paying so much of the debt secured by the mortgage and of the amount paid by John W. Simpson to

Dennis v. Tomlinson.

Hutchinson as remained unpaid after the value of the personal property of Henry T. Simpson converted by John W. Simpson to his own use, and the amount of rents and profits received by John W. Simpson and his heirs were credited thereon; and that they were entitled to an account of the rents and profits received by John W. Simpson and his heirs; and appointed a special master to take and state an account, among other things, of such rents and profits; and appointed commissioners to divide the lands. The master made his report, which was approved; and the commissioners reported that the lands could not be divided without prejudice to the interest of the parties concerned, and the court approved their report and ordered that the lands be sold; and the defendants appealed.

The pleadings in this action present two grounds of equitable jurisdiction. The first is, the plaintiffs, as heirs of Henry T. Simpson, deceased, claim and seek to enforce the right to redeem the portion of the lands in controversy, which was mortgaged to John W. Simpson, after the breach of the condition of the mortgage. If they, as such heirs, have any interest in the lands mortgaged, as they claim to have, they have a right to go into equity to redeem; and, if the mortgagee has received rents and profits, they have a right to demand an accounting by him, and if the mortgage debt has been paid, or, if the rents and profits so received, are sufficient to pay the principal and interest of the mortgage debt remaining unpaid, they have a right to compel the discharge of the mortgage. *Quinn v. Brittain, Hoff. (N. Y.), 353; Calkins v. Isbell, 20 N. Y., 147; Calkins v. Calkins, 3 Barb., 305; Jones on Mortgages, secs. 1093, 1096.*

The second ground is, the pleadings show, that, if plaintiffs are entitled to the interest claimed by them, a long and complicated account, consisting of mutual items, running through many years, unless barred by time, should be taken. The plaintiffs, alleging that they and defendants hold and own

the lands as tenants in common, charge that the defendants and their ancestors, under whom they claim, have severally received the rents and profits during a period of fourteen years, for which they have never accounted. The defendants, on the other hand, allege they have severally paid taxes and cleared and put into cultivation a part of the lands, and made other valuable improvements thereon. Under this state of facts it becomes necessary, if the plaintiffs own the interest they claim, to take and state an account between each of the heirs of John W. Simpson, and the other heirs of Henry T. Simpson, charging each of them with the rents and profits received by him and crediting him with the taxes paid and repairs made; and in charging the rents and profits it would, probably, be necessary to ascertain the value of improvements made on the land for which the rents were received, as in the case of *Grider v. Driver, 46 Ark., 109.* Altogether the account, if any should be taken and stated, could be correctly adjusted only in a court of equity. *Trapnall v. Hill, 31 Ark., 345.*

In order for the court to ascertain whether plaintiffs were or not entitled to redeem and to an account of rents and profits, it was necessary for it to ascertain and decide to whom the lands belonged when the rents and profits were received. If the court had jurisdiction for any purpose it had the right to settle the title to the lands, and to cause them to be divided, if plaintiffs were entitled to partition. *Trapnall v. Hill, 31 Ark., 345; London v. Overby, 40 Ark., 155; Moore v. Gordon, 44 Ark., 334; Crisco v. Hambrick, 47 Ark., 235; Hankins v. Layne, 48 Ark., 550.*

1. MORTGAGEE: Of land, may buy it from purchaser at execution sale.

The evidence adduced on the hearing of this cause shows that Hutchinson recovered a judgment against Henry T. Simpson and that an execution was issued thereon as stated by defendants in their several answers, and that the Sheriff levied on and sold the west half and the west half of the southeast quarter of section eleven to satisfy the execution and that

Dennis v. Tomlinson.

Hutchinson was the purchaser, he being the highest bidder; and that Hutchinson, thereafter, on the 24th of July, 1869, sold and conveyed the same to John W. Simpson.

Is the sale by Hutchinson to Simpson valid? We know no reason why Simpson could not purchase. His being a mortgagee did not prevent or render him incapable of purchasing. He was under no obligation to protect the equity of redemption, and, under circumstances showing a *bona fide* purchase, and that no unconscientious advantage was taken, had a right to purchase it. *Knight v. Majoribanks, 2 Mac. & G., 10; Hicks v. Hicks, 5 Gill. & J. (Md.), 75; Hinkley v. Wheelright, 29 Md., 341; Shelton v. Hampton, 6 Ired. (N. C.), L. 216; and Jones on Mortgages, sec. 711,* and authorities cited.

There was no evidence to show that Simpson held the lands otherwise than as owner. In the absence of evidence showing in what capacity he held them, and the evidence showing that he held by and with the consent of Henry T. Simpson, the presumption is he held as tenant of his brother Henry. If this be true, he had a right to purchase them as held by this court in *Pickett v. Ferguson, 45 Ark., 194.* So, taking any view of the case we can, it is obvious that Simpson had the right to purchase the lands of Hutchinson.

It was conceded by appellees that the Sheriff conveyed the lands sold to Hutchinson immediately after the sale. But they contend that Henry T. Simpson had the right to redeem at any time within twelve months after the sale, and that the Sheriff's deed was and is void because it was prematurely made. They claim that the Code of Practice in Civil Cases gave him this right. But this contention is not sustained by the Code. For section 890 of the Code expressly provides as follows: "This act, known as the Code of Practice in Civil Actions, shall so far go into effect, from and after its passage, that all proceedings in pursuance of its provisions shall be valid, but no proceedings before the first day of January, 1869, shall be ren-

2. EXECUTION SALE: Right of redemption.

37

dered invalid by said Code. But, on the first day of January, 1869, this Code shall take effect for all purposes, and all proceedings shall conform to its provisions."

3. SAME:
Advertisement
of.

Appellees further contend that the sale under the execution was illegal, because it was advertised in the newspaper designated by the Governor of this State as the official newspaper of Arkansas county, the county in which the lands then lay, and were sold, and because the paper so designated was not published in Arkansas county. They base this contention upon section 57 of chapter 68 of Gould's Digest, which is as follows: "When real estate * * *. shall be taken in execution by any officer, it shall be his duty to expose the same to sale, at the court house door, on the first day of the Circuit Court of the county in which the same is situated, having previously given twenty days' notice of the time and place of sale, by at least three advertisements put up in the most public places in each township of such county, or by advertisement in some newspaper printed in the county." This statute required the sale to be advertised in one of two modes—by three advertisements posted in three public places in each township in the county, or by advertisement in some newspaper printed in the county. But this statute was in part repealed by an act entitled "An Act to regulate the publication of legal notices," approved July 14, 1868, which required the notices of sales authorized by law to be published in a newspaper, to be given in the paper designated by the Governor as the official newspaper of the county in which the sales were made. This act made the publication of the notice of any sale under execution in any newspaper, except an official newspaper, illegal. Then, inasmuch as the Sheriff was authorized to publish the notice of a sale under execution in a newspaper, he could do so by causing it to be published in the official newspaper of his county, so long as the act of July 14, 1868, remained in force. It follows, then, that the notice of the sale of the lands sold

under execution to Hutchinson was properly given and was legal.

The deed executed by the Sheriff to Hutchinson contains the proper recitals, and under the statute is *prima ficie* evidence of the legality and regularity of the sale to Hutchinson. *Mansf. Dig., sec. 668.*

According to the evidence heard by the Chancellor, the west half and the west half of the southwest quarter of section 11 belong exclusively to the heirs of John W. Simpson, deceased; but we do not think that the evidence is sufficient to show that the east half of the southeast quarter of section 11 belongs solely to them. So far as we can ascertain from the evidence, it belongs to the heirs of Henry T. Simpson, deceased.

The decree of the court below is, therefore, reversed, and this cause is remanded for the court below to take an account of the rents and profits received for the east half of the southeast quarter of section 11 and to partition it, (the east half of the southeast quarter of section 11), and the rents and profits thereof, if any, among the heirs of Henry T. Simpson, deceased, according to their several and respective interests therein, and for other proceedings in respect thereto, not inconsistent with this opinion.