### LANDON et al. v. TOWNSHEND et al.

#### (Supreme Court, General Term, First Department.  May 15, 1891.)

**1. ADVERSE POSSESSION—EVIDENCE.**

In 1835 P. conveyed certain premises to S., receiving a mortgage for the purchase money.  S. conveyed same to W., who in 1843 was declared a bankrupt.  In 1845 P. commenced suit to foreclose the purchase-money mortgage, without making W. or his assignee in bankruptcy a party.  The premises were sold under decree of foreclosure, and purchased by P., who received a conveyance in 1847.  Plaintiffs' testator purchased the premises at a judicial sale in an action of partition between P.'s heirs in 1858.  In 1850 W. died intestate, and in 1858 P.'s administrator brought an action against W.'s widow and the assignee in bankruptcy to foreclose S.'s purchase-money mortgage to P., and plaintiffs' testator purchased at the foreclosure sale.  At this time one Z. was in possession of the premises, and plaintiffs' testator agreed that he might hold them without payment of rent, which he did till 1865, at which time he sold his rights therein and the crops thereon to B., who remained in possession till 1873.  Defendants claimed title through the purchaser at a sale in bankruptcy made by W.'s assignee in 1869.  *Held,* that plaintiffs' testator, having had possession of the premises since 1847 through P., his heirs and grantees, for a period of more than 20 years, was entitled to the premises; and that the strength of their title by adverse possession for that length of time was unaffected by the fact that the legal title to the premises remained outstanding for a portion of that time in W.'s assignee in bankruptcy; and by the fact that Z., tenant at will of plaintiffs' testator, demised his holding to B., in the absence of evidence that plaintiffs' testator had ever exercised his option to treat such demise as a disseisin.

**2. EJECTMENT—WHO MAY MAINTAIN.**

Testator devised his realty to executors to sell and convey for certain purposes, and in a subsequent clause of the will referred to the executors as trustees of his property.  *Held,* that, if said executors were in fact trustees of said property, they were so in their representative capacity, and, being invested with the legal title to said property, were competent to maintain ejectment therefor in their capacity as executors.

Appeal from judgment on report of referee.

Action of ejectment by Charles G. Landon and another, executors of Benjamin H. Hutton, deceased, against Mary N. Townshend and Francis G. Wieck. There was a judgment entered for the plaintiffs upon the report of a referee, and defendants appeal.

Argued before VAN BRUNT, P. J., and DANIELS and LAWRENCE, JJ.

*John Townshend,* for appellants.   *E. H. Landon,* (*Wm. D. Page,* of counsel,) for respondents.

Van Brunt, P. J. This is an appeal from a judgment entered in favor of the plaintiffs upon the report of a referee. The action was brought in ejectment by the plaintiffs as executors of Benjamin H. Hutton to recover possession of certain land in the city of New York. The defendants are Mary N. Townshend, who claims to own the property, John Townshend, her husband, and one Wieck, who occupied the premises as tenant of Mary N. Townshend at the time of the commencement of the action. The referee found in favor of the plaintiffs upon the ground that in 1867 Benjamin H. Hutton had acquired title to the premises in question, superior to the title represented by the defendants, by adverse possession; and from the judgment entered upon the referee's report this appeal is taken. In September, 1835, one Edward Price owned the property in question, and at said time conveyed it to John Scudder, who gave back to Price a purchase-money mortgage. In 1836 Scudder conveyed the premises to Ebenezer L. Williams. In 1843, Williams, still being the owner of the premises in question, was declared bankrupt, and William C. H. Wardell was his assignee as the official assignee in bankruptcy. At or about this time one George Born entered into possession of the premises in question, they then being vacant and unoccupied, and such entry was without right or claim of right to the premises or any part thereof. In 1845 Price commenced a suit to foreclose the mortgage, but did not make said Williams or his assignee a party. A decree was entered in that suit for a sale and foreclosure, a sale was had, and the premises struck off to Price in 1846, and a conveyance was made by the master in chancery of the same to Price. Some time in the same year Born become the tenant of Price of the premises, and continued as such tenant until the year 1853, when he sold to Louis and Frank Sargent the crops then upon the premises, and all his right in and to the premises in question. The Sargents continued in joint occupation until 1858, when Louis sold out to Frank Sargent, and continued in possession and cultivated the premises, paying rent to Edward Price during his life, and, as the referee finds, (which is contested by the defendants,) to his heirs after his death, until the conveyance of the premises in question to Benjamin H. Hutton, hereinafter mentioned. In 1855 Edward Price died intestate, leaving certain children, his heirs at law. In 1856 letters of administration upon the estate of Edward Price were issued to William Coulter. In 1858 one of the heirs at law of Edward Price commenced an action for partition of the premises in question against his co-heirs, and in June of that year judgment was entered in the action for a sale. In August of that year a sale was had, and a portion of the premises in question was struck off to Benjamin H. Hutton, and a portion to one Cushman, who afterwards assigned his bid to Hutton. In 1850 Ebenezer L. Williams died intestate. In 1858 William Coulter, as administrator of Edward Price, commenced an action in the supreme court against Rhoda Williams, the alleged widow of Ebenezer L. Williams, who was then dead, and William C. H. Wardell, to foreclose said mortgage of Scudder to Price. In December of that year judgment of foreclosure and sale was entered, and in January, 1859, a sale was had, and the premises in question were struck off to one Gordon, who on the same day assigned his bid to Hutton, and in the same month the referee conveyed to Benjamin H. Hutton. In March, 1859, the referee appointed to sell in the partition suit conveyed the premises to Hutton, and on the same day the heirs of Edward Price also conveyed to Hutton. After these several conveyances Hutton saw Sargent, who was in the occupation of the premises in question, and it was agreed between them that he should continue to cultivate and occupy the premises without payment of rent, and he so continued until July 1, 1865, when he sold his crops in and upon the premises and his rights under Hutton to one Bischoff, who thereupon entered and continued to occupy and cultivate the premises under Hutton until his (Bischoff's) death, about the year 1872 or 1873. After Bischoff's death his widow continued in possession of

and cultivated the premises until the defendant Mary N. Townshend took possession of the same in the year 1875 by inclosing the premises with a substantial fence, which gradually disappeared. In the year 1880 Mary N. Townshend let the premises to one John Warner, and in 1884 she let the premises to the defendant Wieck. In January, 1869, Wardell, as the assignee of Williams, presented a petition to the United States court in bankruptcy, praying for an order to sell the right, title, and interest of Williams in the premises, which was granted. Pursuant to said order the assignee offered the premises for sale, and they were in February, 1869, struck off to George Law; and the assignee in March, 1869, conveyed the same to said Law. Law paid the assignee the purchase money, which was subsequently deposited in court to the credit of the estate of Williams. In January, 1873, Law quitclaimed the premises to Mary N. Townshend, and it was by virtue of the title thus procured that she assumed to enter into possession. Benjamin H. Hutton died in 1884, leaving a last will and testament, which was duly proved, and by which he devised his real estate to his executors in trust. One of the executors of said will having died in 1885, this action was commenced to recover possession of the lots in question by the remaining executors of Benjamin H. Hutton, deceased. The case has been twice tried, and upon the first trial the plaintiffs relied upon the title acquired under the deed in the foreclosure suit in 1858, in which William C. H. Wardell was a party; but the court of appeals held that having made Wardell personally a party did not cut off his title as assignee in bankruptcy, because there was nothing upon the face of the proceedings that indicated that he was made a party because of the fact of his being such assignee. 19 N. E. Rep. 424. Upon the present trial further evidence was given of the facts above mentioned, and, as already stated, the referee found that in 1867 Hutton had acquired a title superior to that of the assignee in bankruptcy by adverse possession.

The first point raised by the counsel for the appellants is that the question in this case is *res adjudicata*, because when the court of appeals reversed the first judgment it decided that the facts proved by the plaintiffs did not entitle them to recover. The court expressly placed its decision upon the fact that the plaintiff could not maintain the action under his title in the foreclosure suit, and refused to consider any other question. It is further urged that the plaintiffs, as executors, could not maintain this action; that, if the executors took as legatees, they are trustees, and should have sued as such. That is undoubtedly the fact; but by the terms of the will itself, which is in evidence without objection, it appears that the real estate in question was devised to the executors as such, and, although the executors may be trustees, they are such trustees in their representative capacity, and the proofs which were admitted without objection show that they were vested with the legal title. The criticism as to the legality of the trust contained in the will it is not necessary to consider at length, because at most the disposition made of the income pending the ascertainment of the amount of the residue of the estate would only be void, and not at all affect the title of the executors as trustees.

The main question in the case is as to whether the referee was justified by the proof in holding that Hutton had in 1867 or thereabouts acquired a title by adverse possession. It seems to be suggested that because the legal title was in the assignee in bankruptcy a title by adverse possession could not be acquired upon the theory that the property of the bankrupt was *in custodia legis* under the control of the United States district court as an asset to be administered in that court, and could not be removed from that custody, or sold, except by the order of the court. We are not aware of any rule which prevents the statute of limitations from running in reference to real estate simply because the owner of the fee becomes a bankrupt. The main point of contention, however, seems to be that Price, after he obtained the deed in foreclosure in 1846, and entered into possession of the premises under said

deed, was only a mortgagee in possession, and our attention is called to the adjudication in *Shriver* v. *Shriver*, 86 N. Y. 580. But all that was held in that case was that, prior to the Code, where a mortgagee becomes a purchaser at a foreclosure sale made in an action in which the owner of the equity of redemption was not a party, and enters into possession by virtue of a deed pursuant to such sale, he could claim that he thereby became a mortgagee in possession, and could defend against the owner of the equity of redemption or his representative any action except for an accounting of the rents and profits, and to redeem, which action must be commenced within 10 years; but that, in case any other person purchased and went into possession, the owner of the equity of redemption had 20 years from the entry in which to bring suit to regain possession. But this case does not decide that where a mortgagee purchasing at a foreclosure sale enters into possession of the premises under the deed, supposing that he has thereby acquired a good title, he can defend such possession, no matter how long it may continue, only as mortgagee in possession. On the contrary, it decides exactly the converse of that proposition. It decides that, as against an action brought by the owner of the equity of redemption against a mortgagee in possession for an accounting, the 10-years statute applies, and that in every other case a right to maintain the action to recover the possession of the premises is barred by the limitation of 20 years. Therefore, if Price and his heirs and their grantees were in possession for 20 years under such circumstances as would constitute adverse possession, their title would ripen into an absolute one against the owner of the equity of redemption and those representing him.

Now, the evidence in this case shows, and the referee finds, that upon the receipt of the deed on the first foreclosure said Price entered into possession, and Born, the person in possession, became his tenant, and remained there until 1853; that Louis and Frank Sargent succeeded as tenants, and remained there until his death, and subsequent thereto, until in 1858 Hutton acquired the title to the premises by the partition sale and the conveyance from the heirs of Price; and one of the Sargents remained in possession as such tenant of Hutton (at will, it is true) until 1865, when Bischoff succeeded him, and remained until his death in 1872, all these parties cultivating the premises for the purpose of market gardening during this period. This clearly showed a possession of the premises in Price and his successors for a period of over 20 years. It is urged that the possession of Bischoff was not the possession of Hutton, because Sargent, being a tenant at will, is disqualified from granting a lease available against any one but himself, for a demise would amount to a termination of the tenancy at sufferance, and it would be optional with the landlord to regard the entry of the lessee of the tenant at will as a disseisin. This proposition is absolutely true, but there is no evidence that Hutton ever exercised the option to terminate the tenancy because of the entry of the lessee of the tenant at will, but rather assented to such transfer. Our attention is called in respect to this proposition to the case of *Reckhow* v. *Schanck*, 43 N. Y. 448, but the adjudication in that case was simply to the effect that, there being no evidence that the plaintiff assented to the occupation of the transferee, and having the option to terminate the lease because of such transfer, notice to quit was unnecessary before commencing the possessory action. The very taking of the proceedings to regain possession was an exercise of the option,—a very different case from the one at bar. But it is urged that Price's possession could not under any circumstances be other than that of mortgagee in possession. We think that the case of *Shriver* v. *Shriver* shows conclusively that such is not the case; but, in any event, it does not appear that Price went into possession of the premises as mortgagee. It is true that he had the right to claim possession as such mortgagee if his title was assailed by the owner of the equity of redemption; but in the case at bar he went into possession under the deed, evidently supposing that the

deed conveyed a title, although it may not have done so, and that is all that is necessary in order to start an adverse possession,—namely, entry and occupation under a claim of title founded upon a written instrument. The question as to how much Price got by his deed is entirely immaterial, because, if the party entering gets a title by his deed, there would be no reason for quieting his title by claiming adverse possession. A title by adverse possession is only necessary to be established where there is a defect in the paper title in that the deed does not bar the rights of the owner of the equity of redemption. But Price went into possession claiming title by reason of his deed, and exercised the rights of ownership, his heirs and their grantees continuing the same subsequent to his death for a period of much more than 20 years. This, it would seem, did establish a title by adverse possession. It is urged that by the foreclosure of the mortgage by the administrator of Price in 1856 the chain of adverse possession was broken, and that because Hutton fortifying himself by purchasing at this sale, and acquiring whatever title that proceeding might give him, he thereby waived the superior title which he might otherwise have acquired. It may be true that if Price was in possession simply as a mortgagee in possession his heirs took no interest in the property; but, as already seen, Price's possession was not necessarily that of mortgagee in possession, but he went into possession claiming an absolute title by virtue of the deed he received under the foreclosure proceedings. This claim descended to his heirs, and was subsequently conveyed to Hutton, either by them directly or in the partition sale, and Hutton succeeded to all the rights acquired by the previous possession, and which in 1867 ripened into a perfect title; and by the mere fact of his having bought at foreclosure sale what might appear to have been an outstanding title which could not, because of defect in the proceedings, ripen into a perfect title, he certainly did not lose the advantage which had been gained by reason of the previous adverse holding of the property in question. Our attention is called to the case of *Calkins* v. *Isbell*, 20 N. Y. 147, to establish the proposition that the attempted foreclosure was an acknowledgment that the mortgage was an existing mortgage, and the right to redeem in force. But in that case it appeared that the mortgagee who had granted the premises instituted the proceeding at the request of his grantees, and for this reason it was held that a proceeding to foreclose, with whatever motive instituted, seems to be entirely inconsistent with any contention on the part of the mortgagee that his possession had ripened into a title. There is no evidence in this case that this foreclosure suit was commenced by and with the assent of the heirs of Price, although, perhaps, it may have been so instituted; but such a finding cannot be made as will cut off their rights obtained by adverse possession except upon proof of the fact. The claim that Hutton's adverse possession only commenced in January, 1859, is founded upon the erroneous theory, as already stated, that because he took a deed of these premises under the foreclosure proceedings of 1858 the rights which he acquired in the partition proceedings or from the heirs of Price were lost. We think, therefore, as already stated, that the evidence in this case justified the conclusion of the referee that there had been a continuous adverse possession of those premises since 1847 by Edward Price, his heirs and grantees, and that the plaintiffs in this action, representing such title, could recover possession of the premises from the defendants. The judgment should be affirmed, with costs. All concur.