McCarren *v.* Coogan.

---

## DENNIS McCARREN

*v.*

## MARY COOGAN et al.

A complainant who had been in possession for more than twenty years of certain premises under a mortgage, desiring to make his title merchantable, filed a bill in equity against the heirs of the mortgagor, in which he set out the mortgage and his possession under it, alleged that a certain amount was still due and owing upon it, prayed that an account might be taken of the amount so due, the defendants decreed to pay the same within a day to be fixed or be forever foreclosed &c. One of the defendants appeared and answered, prayed that an account might be taken of what, if anything, was due complainant, and defendant be permitted to redeem &c. Complainant then moved to dismiss his bill upon payment of costs.—*Held,* that such dismissal must be upon terms that it be without prejudice to the defendants' right to the benefit of the admission and waiver contained in the bill, in any proceedings defendant might take for the redemption of the premises.

---

Motion by complainant to dismiss his own bill.

*Mr. Warren Dixon,* for the complainant.

*Mr. Gilbert Collins, contra.*

McCarren v. Coogan.

PITNEY, V. C.

This is a bill praying the strict foreclosure of two mortgages,. one made by Edward Tomney on the 1st of June, 1853; the other made by the widow and supposed devisee to Edward Tomney, dated March 20th, 1859.

The bill alleges that Edward Tomney, the mortgagor of the first mortgage, died intestate in 1855, leaving surviving him his widow, Mary Tomney, and leaving no children nor the issue of any, but leaving five sisters, to wit, Bridget Tomney, who afterwards died unmarried; Ann, the wife of James Bryne; Jane, the widow of Patrick Doyle; Mary (since deceased), the wife of Lawrence Coogan, and Catharine, wife of Thomas Doyle, both deceased. It alleges that there was a paper found after the death of Edward Tomney, which was supposed to be his last will and testament, by which he devised the mortgaged premises to his widow, Mary, but that the paper was never offered for probate and never proved by reason of inability to find the subscribing witnesses or of proving their signatures, and complainant does not know its present whereabouts. It alleged that Mary Tomney remained in possession after the death of her husband until about 1863, when she died. In the meantime she had made the second mortgage as owner. It alleges that the complainant entered into possession as assignee of these mortgages in 1865 and has continued in possession ever since.

The bill further alleges that the amount of the first mortgage, viz., $150, with interest from June 1st, 1861, and the amount of the second mortgage, $100, with interest from the 20th of March, 1862, " still remains due and unpaid to your orator, whereby the said mortgages and the estate thereby granted have become absolute in your orator and his heirs."

The bill then alleges that search has been made by complainant for the brothers and sisters of Edward Tomney and their progeny, and alleges that Mary Coogan, the sister of Edward Tomney, had a daughter Mary Coogan, but that the complainant was unable to ascertain how many of those sisters were dead and how many of their offspring were dead and how many were living, or the names or addresses of any of the heirs, devisees

·or personal representatives of any of the parties above mentioned.

The bill then prays that an *account may be taken by and under the direction of the court of what is due and owing to the complainant upon the said mortgages,* and that the defendants, or some of them, may be decreed to pay to the complainant the principal ·sums so due as aforesaid and the interest due, and to grow due, thereon, with costs, by a short day to be appointed by the court, and that in default thereof the defendants, and all persons claiming under them, may be foreclosed of and from all right, title and equity of redemption in and to all said mortgaged premises.

It then prays process against Ann Byrne, James Byrne, Jane Doyle, Lawrence Coogan, the husband of Mary Coogan ; Lawrence Coogan, John Coogan and Mary Coogan, the children of Mary Coogan, deceased ; Patrick Doyle, Martin Doyle and Hester Doyle, the children of Catherine and Thomas Doyle, deceased, and their, and each of their, unknown heirs, devisees and personal representatives, and the unknown heirs, devisees and personal representatives of Edward Tomney, deceased, and of Mary Tomney, his wife, deceased, and of Bridget Tomney, deceased.

To this bill an answer was filed by Mary Coogan, the daughter of Mary Coogan, who was the sister of Edward Tomney, and by her answer she shows herself to be one of the heirs at law of Edward Tomney, and to combine in herself the title of all the heirs at law of Edward Tomney through a conveyance which she alleges was spread upon the records of Hudson county, where the land is situate. She admits the giving of the two mortgages ; denies that the widow of Edward Tomney was his devisee, and closes her answer in this wise :

"And this defendant prays that an account may be taken of the rents received by said complainant as mortgagee in possession of said premises and of the proper and lawful disbursements made by him out of the same, and that it may be determined by decree of this court whether anything, and, if anything, how much, remains due to the said complainant on his mortgage, and that this defendant may be permitted to redeem said premises from the said mortgage, and that the same may be delivered up to be cancelled."

McCarren v. Coogan.

There are no formal words of a cross-bill, such as are required by the rule, but the language just quoted contains a proper prayer of a bill to redeem.

The complainant now moves to dismiss his bill. His object is manifest. He has been in possession more than twenty years, and, but for his having filed this bill, the defendant's right to redeem would probably be barred by the lapse of time. No doubt when the bill was filed the complainant supposed that no appearance would be made, and that a decree of strict foreclosure would pass by default. In this he is disappointed, and upon the bill and answer as they stand it seems plain enough that the defendant is entitled to an account and to redeem. To avoid this result the complainant moves to dismiss his own bill, and insists that his right to dismissal, upon payment of costs, of course, is absolute.

The general rule that the complainant has the right to dismiss his bill at any time upon payment of the defendant's costs is subject to certain limitations. Mr. Daniel (*1 Dan. Ch. Pr. 790*) says that when there has been any proceeding in the case which has given the defendant a right against the plaintiff the plaintiff cannot dismiss his bill as of course. And this position is thoroughly established by the authorities.

In *Carrington* v. *Holly, 1 Dick. 280*, the bill was filed to establish complainant's right to certain estates and an issue to be tried by jury was ordered. After this, and before the trial, complainant asked to have his bill dismissed, and Lord Hardwicke granted his motion, because there had been no determination of any issue, but he said that if the issue had been tried and a verdict had been given for the defendant, complainant could not ask for a dismissal, because the defendant had the right to set down the cause for hearing on the verdict, and if the court was satisfied with the verdict to have a decree in his favor, which would be conclusive.

And see *Gartside* v. *Isherwood, 2 Dick. 612*.

It will be observed that the case in *Carrington* v. *Holly* did not admit of any affirmative relief in favor of the defendant. All

he could get would be a final determination on the merits against the complainant.

In *Cooper* v. *Lewis*, *2 Phil. 178, 16 L. J. Ch.* (*N. S.*) *265*, after a demurrer to the bill had been, upon argument, overruled, the complainant moved to dismiss his bill, but Lord Cottingham refused the motion on the ground that the defendant had the right to appeal from the order overruling the demurrer and to procure, if he could, a decision that the demurrer was well taken. Here, again, this result would be all the benefit the defendant could obtain from the suit.

In *Booth* v. *Leycester*, *1 Keen 247* (at *p. 255*), there was a bill and a cross-bill producing two causes, and testimony was taken and the causes were set down for hearing together. At this stage the complainant in the cross-bill asked for leave to dismiss his cross-bill. The motion was refused by Lord Langdale after argument on the ground that the complainant in the original cause would be prejudiced by such dismissal, and the cause proceeded to hearing.

In *McCurdy* v. *Mather*, *Kirby* (*Conn.*) *273*, it was held that after the court had announced its decision plaintiff could not dismiss his bill, although no decree had been entered or signed.

In each of these cases, as in the first one, it will be observed that all that the defendant could realize out of the suit was a final decision that the complainant was not entitled to his remedy.

In *Paul* v. *McPherson*, *3 Bland* (*Md.*) *539*, which was a bill for an account, the chancellor refused a motion by complainant to dismiss his bill after interlocutory decree for an account had been made, on the ground that the defendant was thereby clothed with the rights of an actor and might have a decree in his favor against the complainant for any balance found on the accounting.

In *Collins* v. *The Executors of Taylor*, *3 Gr. Ch. 163*, the bill was filed against executors by a person claiming to be one of a class for whose benefit a sum of money had been, by the will, given in trust, and as many of that class as were known to the complainant were made parties defendant. There was a decree establishing the trust and a reference to a master to ascertain who were the persons who were entitled to share in the fund and in

McCarren *v.* Coogan.

what proportion. After report by the master, the beneficiaries who had been made defendants entered their appearance to the action. Afterwards an order was made, without notice to these beneficiaries, dismissing complainant's bill on his own motion. Three years later motion was made in behalf of the defendant beneficiaries to discharge the order of dismissal, which, after elaborate argument, was disposed of by Chancellor Pennington as follows : " The order of dismissal was improperly made, and must be set aside except so far as respects the claim of the complainant, as to him it must stand. The legatees who are defendants are entitled to the benefit of the interlocutory decree and the master's report thereon, and are at liberty to file a supplemental bill (in the nature of a cross-bill) to obtain the benefit of the said decree without prejudice from the order of dismissal. But they cannot be permitted to proceed in this suit in the name of the complainant."

Here the complaining defendants and the complainant were in the same interest against the executors.

Upon inquiring now whether the defendant here has acquired any right against the complainant by any proceedings in this cause, we find, indeed, no decree or determination by the court in her favor, but the bill itself contains the most conclusive admission of her right to redeem, and also a prayer that the amount due should be ascertained and she decreed to pay it within a short time to be fixed.

The suit is such that the very relief asked for by the complainant gives the defendant a correlative relief, viz., the right to redeem. The rule seems to be fundamental that the several rights to foreclose and to redeem are reciprocal and one cannot exist without the other. Hence the very filing of the bill is an admission which cannot be controverted in this suit of the right of the defendant to redeem. It is a waiver of record of the right to interpose the bar of the statute based on the lapse of time. It is instanced by Mr. Powell (*1 Pow. Mort. 380*) as one of the acts of a mortgagee by which he acknowledges the transaction to be a mortgage.

To the same effect is *2 Jones Mort.* § *1170* and cases there cited. *Robinson* v. *Fife, 3 Ohio St. 551 ; Calkins* v. *Calkins, 3 Barb.*

McCarren v. Coogan.

(*N. Y.*) *305; S. C., 20 N. Y. 147; Jackson* v. *Slater, 5 Wend. 295.* And Mr. Jones, speaking of foreclosure proceedings, says (§ *1170*):

"It would be wholly inconsistent for the mortgagee to claim that there is no right of redemption after he has undertaken by such proceedings to bar such a right. The giving of notice under a power of sale, or under a statute regulating foreclosure by advertisement, is an admission of a right to redeem. This is, in effect, an invitation to the owner of the equity of redemption to pay the amount of the debt and redeem the estate if he so chooses, and the mortgagee cannot object if he accepts the situation."

In *Calkins* v. *Isbell, 20 N. Y. 148,* the mortgagee, after being in possession about twenty years, made an abortive attempt to foreclose his mortgage by statutory proceedings, and of this attempt Comstock, J. (at *p. 151*) says : "The proof shows quite clearly that this was done, not for the purpose of collecting the money alleged to be unpaid on the mortgage, but in order to perfect a title which would be more satisfactory to the grantees Tucker and Isbell. The evidence also leaves no reasonable doubt that the mortgagor understood such to be the motive of Mathew Calkins in commencing the foreclosure ; and I am satisfied, moreover, that the proceeding was instituted with the concurrence and at the request of both Tucker and Isbell. It is, therefore, to be deemed their act, as well as that of Calkins, for all the purposes of the present case.

"Under the circumstances stated, I have hesitated somewhat upon the question whether the right of the mortgagor to reclaim the possession of his land was revived by the attempt to foreclose the mortgage upon it; but, on the whole, I am convinced that such is the effect to be given to that proceeding. *If a bill of strict foreclosure had been filed, even with the avowed object of perfecting the title, no one would entertain the slightest doubt on the subject. The very decree to be pronounced in such a case would give the mortgagor a certain time to come in and satisfy the encumbrance, to the end that the premises might be restored to him.* A notice under the statute, with whatever motive it may be given, is a very distinct and emphatic admission that the holder of the mortgage, if in possession of the land, claims that possession in

the character of mortgagee only.   This admission is addressed to the mortgagor, and to all other parties concerned.   The object may be to perfect a title, but the thing actually done is a very direct invitation to the mortgagor to come forward and pay the debt, the amount of which must be set forth in the notice.   The mortgagor may accept the invitation, and if he tenders the money the proceeding is at an end.   If the tender does not *per se* discharge the mortgage, it is, nevertheless, a good foundation for a bill to enjoin the sale.   But suppose the mortgagor does nothing, and a sale is had under the power pursuant to the notice, resulting in a surplus over and above the amount claimed to be due, it cannot be doubted that the mortgagor, or his representative, is entitled to that surplus.   Yet this can be true only on the ground that all the interest which the mortgagee has in the premises is satisfied and extinguished when the debt is paid.   In short, a proceeding to foreclose, with whatever motive instituted, seems to be entirely inconsistent with any pretensions on the part of the mortgagee that his possession has ripened into a title.   I am, therefore, of opinion that the plaintiff is not barred by any statute or rule of limitation."

By the appearance of the defendant herein and her answer, she has done all she is required to do to take advantage of complainant's admission and waiver, and no formal cross-bill was necessary.   The bill asks that the amount due on the mortgage be ascertained and that the defendant be decreed to pay it, and the defendant joins in the prayer for an account and expresses her willingness to pay what is due.   It thus appears that there is absolutely no disputed right between the parties.   The only dispute that may arise will be as to the amount of the indebtedness.   The situation seems to me to be very much the same as if a motion had been made for a reference to a master to take an account and the court had declared that such an account would be made.   Such an order on the pleadings as they now stand would be a matter of course as between the complainant and the answering defendant.   She answers the description in the bill of the Mary Coogan who is alleged to be the daughter of Edward

Tomney's sister and one of his heirs at law, and, if she is that person, she is entitled to redeem.

Now, can the complainant deprive the defendant of the benefit of that admission by dismissing his own bill simply upon payment of the defendant's costs? In my opinion he cannot. He is, indeed, entitled to dismiss his bill because the defendant has not in the present state of the pleadings become an actor. She has not acquired a right to intervene and proceed with the suit on her own behalf. But I think that the order of dismissal, if taken, must be upon the terms that it be without prejudice to the defendant's right to have the benefit of the admission and waiver contained in the bill in any proceedings she may be advised to take either in this suit by amending her answer, or in any other suit which she may bring.